■ BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respon-

dent, v CARY HERSHKOWITZ, Appellant. [764 NYS2d 254] —Judgment, Supreme Court, New York County (Barbara Kapnick, J.), entered September 18, 2002, which granted the petition pursuant to CPLR article 75 and section 3020-a of the Education Law for vacatur of an opinion and award dated September 28, 2000, to the extent of directing the Hearing Officer to hold a new hearing and to consider respondent's previously excluded written statement, unanimously affirmed, without costs.

The respondent is a high school chemistry teacher who was alleged to have engaged in sexually explicit Internet communications with a student at his school. He was also charged with having inappropriate personal conversations with at least one other student (about his dislike for her boyfriend), and of soliciting other students to join him in a business venture.

On June 4, 1998, two investigators from the Office of the Special Commissioner of Investigations (SCI) came to respondent's school, and he was called to the principal's office to be questioned about his conduct. Neither the school principal nor any other school employee attended the interview. On June 18, 1998, an investigator prepared a report, and in July 1998, SCI notified the Schools Chancellor of its findings. According to SCI's letter to the Schools Chancellor, at the June 4 interview, respondent admitted having a series of Internet conversations with one student between January and June of 1998. He also acknowledged changing his Internet screen name so that the student's mother would not know she was "chatting" with him. He divulged that his communications with the student became sexual, and he also revealed that he called this student, more than once, on the telephone. The investigators also reported that respondent acknowledged having personal electronic conversations with a second student, and discussing participating in a joint business venture with other students. Pending the outcome of SCI's investigation, respondent was assigned to administrative duty at the office of the Superintendent for Manhattan High Schools.

The Board of Education next brought a disciplinary action against respondent pursuant to Education Law § 3020-a. At the commencement of the disciplinary hearing, respondent moved to suppress all oral and written statements made by him at the June 4, 1998 interview, as violative of the collective bargaining agreement between the Board of Education and the United Federation of Teachers (the agreement). The Hearing Officer found that the June 4 interview was conducted in viola-

tion of article 21 (B) (2)[1] of the agreement, and suppressed the fact that the June 4 interview had occurred, as well as any statements or other evidence obtained at it. After holding a hearing, he dismissed all of the charges and specifications brought against the respondent, and ordered him reinstated as a tenured chemistry teacher.

Petitioner Board of Education then brought this article 75 proceeding to vacate the Hearing Officer's decision, or, in the alternative, to direct the Hearing Officer to hold a new hearing and to consider the previously excluded evidence.

In the order appealed from, the court granted the petition, finding that the Hearing Officer exceeded his power within the meaning of CPLR 7511 (b) (1) (iii). It directed the Hearing Officer to hold a new hearing in which respondent's previously excluded written statement could be considered. Because we find that public policy precludes applying the procedural requirements of a labor agreement between the Board of Education and the United Federation of Teachers to exclude evidence obtained by the SCI during one of its investigations, we affirm.

The court's authority to overturn an arbitration award on public policy grounds is considered a narrow exception to the general rule that arbitrators have broad power to determine all disputes submitted to them pursuant to the parties' agreement (*Matter of New York City Tr. Auth. v Transport Workers Union of Am.*, 99 NY2d 1, 7 [2002]). To invoke the exception, the court must be able to examine an arbitration agreement or an award on its face, and conclude that public policy considerations, embodied in either statute or decisional law, prohibit (1) arbitration of the particular matters to be decided, or (2) certain relief being granted (*id.* at 8-9; *see also Matter of City of New York v Uniformed Fire Officers Assn., Local 854*, 95 NY2d 273 [2000]; *Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 631 [1979]). Applying these principles, we find that the arbitration award here, exculpating respondent based upon excluded evidence obtained by the SCI during one of its investigations,

---

1. Article 21 (b) (2) of the collective bargaining agreement between the Board of Education and the United Federation of Teachers provides that, "Whenever an employee is summoned for an interview for the record which may lead to disciplinary action, he shall be entitled to be accompanied by a representative who is employed by the city school system, or by an employee of the union who is not a lawyer, and he shall be informed of this right * * *. An interview which is not held in accordance with these conditions shall not be considered a part of the employee's personnel file or record and neither the fact of the interview nor any statements made at the interview may be used in any subsequent Board proceeding involving the employee."

violates the public policy enunciated in the Court of Appeals' decision in *Matter of City of New York v Uniformed Fire Officers Assn., Local 854 (supra [Fire Officers]).*

In *Fire Officers,* the Court of Appeals held that the City Department of Investigation's (DOI) ability to conduct criminal investigations presented a strong public policy which enjoined arbitration of a dispute as to whether a collective bargaining agreement limited or restricted the procedures that could be used in conducting the questioning of witnesses and suspects. The same policy which favored allowing the DOI to conduct an uninterrupted investigation in *Fire Officers* requires that the SCI be allowed to do the same here. It also mandates that the fruits of that investigation not be barred from consideration based upon certain terms of a collective bargaining agreement to which SCI was not a party.

Some background as to SCI informs our analysis. Based upon a finding that the Board of Education's self-monitoring system was inadequate to carry out the mandated duties, SCI was created in June 1990 pursuant to the authority of Executive Order No. 11 of the Mayor of the City of New York (the Executive Order), the New York City Charter, and Education Law § 2554 (15) (a); (21).[2] The Executive Order specifically requires the Commissioner of DOI "to appoint a Deputy Commissioner of Investigation for the City School District of the City of New York (Deputy Commissioner), *who will be independent from the Board of Education,* and will be responsible for the investigation of corruption, conflicts of interest, unethical conduct and other misconduct within the school district of the City of New York" (emphasis supplied). The Executive Order provides SCI with the following powers and duties: "(a) The Deputy Commissioner shall receive and investigate complaints from any source or upon his own initiative or at the direction of the Commissioner of Investigation regarding alleged acts of corruption or other criminal activity, conflicts of interest, unethical conduct, and misconduct * * *. The Deputy Commissioner may refer such matters involving unethical conduct or

---

2. While the Board of Education resolution provides that "Deputy Commissioners" of the SCI "shall be deemed employees of the Board of Education" pursuant to Education Law § 2554 (21), the Executive Order expressly states that the purpose of creating the SCI was to create an entity "independent of those whom it is called on to investigate."

Further, while the Executive Order and the Board of Education resolution creating the SCI have been found to conflict, in at least one area, with the State's Education Law (*Matter of Board of Educ. v Mills,* 250 AD2d 122 [1998], *lv denied* 93 NY2d 803 [1999]), there is no direct conflict with respect to the provisions relevant to this appeal.

misconduct as he or she deems appropriate to the Board of Education, The Chancellor, a Community School Board, or Community Superintendent, as appropriate, for investigation, disciplinary, or other appropriate action * * *." SCI's authority extends beyond investigations which are precedent to disciplinary proceedings within the Board of Education. Both SCI and DOI are empowered to investigate criminal misconduct and report their findings to "the appropriate prosecuting attorney" or board of ethics (*see* NY City Charter § 803 [c]).

In *Fire Officers*, the Court granted a permanent stay of arbitration, holding that binding DOI to the employee rights provisions of a collective bargaining agreement "would not only impinge on DOI's ability to conduct a criminal investigation [citation omitted], but would add another layer of process, decision-making and potential conflict" (95 NY2d at 284). While this case arises in a different procedural context, the same public policy requires vacatur of the arbitration award, which was reached here upon the exclusion of relevant inculpatory evidence lawfully obtained in an SCI interview.

While SCI is not a classic law enforcement agency, it was created for the express purpose of conducting a broad range of investigations, independent of the Board of Education. To require SCI to have union representatives at its interviews would invariably create conflict and frustrate SCI's purposes. Unlike the right to counsel, which is required for classic law enforcement interrogations, having a union representative present at all SCI interviews creates potential conflict, because the interests of the union and its representatives are not necessarily aligned with the interests of the subject of the investigation. For these reasons, the clause in the collective bargaining agreement between the Board of Education and the United Federation of Teachers, which requires the presence of union representatives at any interview which could lead to employee discipline, should not have been invoked to exclude inculpatory oral and written statements made by the respondent before the SCI. Accordingly, we affirm the order appealed from, directing the Hearing Officer to hold a new hearing and to consider respondent's previously excluded written statement. Concur—Mazzarelli, J.P., Sullivan, Ellerin, Lerner and Marlow, JJ.