■ In the Matter of the Arbitration between Binghamton City School District et al., Respondents, and Brian Peacock, Appellant. [823 NYS2d 231]—

Rose, J. Appeal from that part of a judgment of the Supreme Court (Hester, Jr., J.), entered May 12, 2005 in Broome County, which partially granted petitioners' application pursuant to CPLR 7511 to vacate an arbitration award.

Pursuant to Education Law § 3020-a, petitioners filed formal charges against respondent, a 32-year-old tenured teacher, stemming from his relationship with a 16-year-old female student over the course of her senior year of high school. Following several days of testimony, the Hearing Officer filed a lengthy decision that found respondent guilty of some of the charges and dismissed others. Specifically, the Hearing Officer found that respondent and the student had virtually constant telephone contact during most of the 2002-2003 school year, she frequently visited him in his office at school even though he was not one of her teachers and they spent other time together in private. Respondent admittedly called the student 1,329 times within a six-month period, including while he was on vacation, often speaking with her at length and once calling her 21 times in a single day. In addition, respondent gave the student cell phone cards worth $400, enabling her to call him without a record of her calls appearing on any phone bills.

The Hearing Officer also found that, although respondent at-

tempted to conceal the relationship, petitioners became aware of it in November 2002 when another student reported that respondent and the student were spending time together. The other student told school officials that respondent had gone to the student's dance studio after dark and talked with her there, had given the student gifts and driven her in his car. When petitioners informed the student's mother of this, she became very concerned and angry, and strongly disapproved of respondent's contact with her daughter. At that time, three school administrators told respondent to stay away from the student. Respondent also knew that the student's mother was so distressed by his conduct with her daughter that she considered filing a formal complaint. "Nonetheless," as the Hearing Officer found, "he not only continued that relationship in school, but also carried it on privately away from the campus."

Ultimately, during final exams, respondent left school early without permission and took the student to his home in his car at a time when he knew his wife was out of town. With the window blinds closed, respondent spent six hours alone with the student in his home. This incident was observed and reported to petitioners by their investigator, and they immediately informed the student's mother that her daughter was at respondent's home rather than where she had told her mother she would be. The student's mother and another relative then went to respondent's home and pounded on his door several times, insisting that the student come out. The relative observed respondent and the student in a second story window. Eventually, the student emerged alone. The Hearing Officer declined to find that there had been any sexual contact because the student had both admitted and denied such contact in her various statements. Although her mother testified that the student had said that respondent loved her and he would leave his wife to be with her when she was 18 years old, the Hearing Officer concluded that no romantic relationship had been proven.

Based on the foregoing, the Hearing Officer found respondent guilty of the charges of insubordination for failing to heed an administrative order, neglect of duty for leaving school early without permission and conduct unbecoming a teacher because "he engaged in an inappropriate personal relationship with [the student]." He also found that respondent showed no remorse for his conduct, was insensitive to the impact of the relationship on the student and the concerns of her family, and had "arrogantly" betrayed petitioners' trust in him. Based upon these findings, the Hearing Officer imposed a penalty of suspension without pay for one year. Petitioners then commenced this

CPLR article 75 proceeding. Supreme Court, while sustaining the charges, found the penalty to be "shockingly lenient," vacated it and remitted the matter for imposition of a new penalty. Respondent appeals.

We begin with the observation that Supreme Court's authority to vacate an award is limited to acts in excess of the arbitrator's power and the other grounds set forth in CPLR 7511 (b) (1) (*see* Education Law § 3020-a [5]). Here, the sole basis for vacating the award is upon a finding that the arbitrator "exceeded his power" (CPLR 7511 [b] [1] [iii]). While we recognize that the penalty imposed in the award here was within the statutory parameters, which range from a written reprimand to a dismissal (*see* Education Law § 3020-a [4]), we nonetheless find merit in petitioners' argument that the award violates a strong public policy (*see Matter of Board of Educ. of E. Hampton Union Free School Dist. v Yusko*, 269 AD2d 445, 446 [2000]; *cf. Matter of North Country Community Coll. Assn. of Professionals [North Country Community Coll.]*, 29 AD3d 1060, 1061-1062 [2006], *lv denied* 7 NY3d 709 [2006]). A court's authority to overturn an arbitration award on public policy grounds is a recognized, albeit narrow, "exception to the general rule that arbitrators have broad power to determine all disputes submitted to them pursuant to the parties' agreement" (*Board of Educ. of City of N.Y. v Hershkowitz*, 308 AD2d 334, 336-337 [2003], *lv dismissed* 2 NY3d 759 [2004]; *see Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1, 6-7 [2002]; *Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York*, 94 NY2d 321, 326-327 [1999]).

We find such an exception here because of New York's explicit and compelling public policy to protect children from the harmful conduct of adults (*see e.g.* Social Services Law § 384-b; Family Ct Act art 10), particularly in an educational setting (*see e.g.* Education Law art 23-B; Executive Law § 296 [4]). When an educator's conduct involves inappropriate contact with students who are minors, this policy gives the highest priority to protecting their welfare (*see e.g. Matter of Shurgin v Ambach*, 56 NY2d 700, 703 [1982]; *Matter of Board of Educ. of E. Hampton Union Free School Dist. v Yusko, supra; Matter of Burkes v Enlarged City School Dist. of Troy Bd. of Educ.*, 257 AD2d 891, 892 [1999]; *Matter of Forte v Mills*, 250 AD2d 882, 884 [1998]; *Matter of Boyea v Board of Educ. of Madrid-Waddington Cent. School Dist.*, 209 AD2d 852, 852 [1994], *lv denied* 85 NY2d 804 [1995]; *Matter of Katz v Ambach*, 99 AD2d 897, 897 [1984]). Further, in light of a school's liability and the adverse effect on its students

if such misconduct were to recur, this policy prohibits an award in a disciplinary proceeding which would not adequately protect students from the teacher in the future, particularly where the offender has been insubordinate, refuses to admit that he or she has done anything wrong and shows no remorse (*see e.g. Matter of Auxier v Town of Laurens*, 23 AD3d 912, 914 [2005]; *Matter of Forte v Mills, supra* at 884; *Matter of Turco v Board of Educ. of Windsor Cent. School Dist.*, 211 AD2d 861, 862 [1995]; *Matter of Jackson v Sobol*, 170 AD2d 718, 719 [1991]; *compare Matter of Board of Educ. of City School Dist. of City of N.Y. v Mills*, 250 AD2d 122, 126 [1998], *lv denied* 93 NY2d 803 [1999] [where charges of insubordination were not sustained and the teacher's inappropriate relationship with a female student was of a "limited nature"]).

Here, the Hearing Officer found that respondent engaged in an improper, intimate and clandestine relationship with a minor female student. Moreover, respondent showed no remorse for the conduct proven by petitioners, disobeyed administrative direction to cease his relationship with the student and not transport her in his car, and continued to contact her even after disciplinary charges were brought against him. Given these circumstances, the award fails to adequately protect students in the future and, thus, violates a strong public policy (*see Matter of Board of Educ. of E. Hampton Union Free School Dist. v Yusko*, 269 AD2d 445, 446 [2000], *supra*). Accordingly, we decline to disturb Supreme Court's ruling.

Cardona, P.J., and Carpinello, J., concur.

Mugglin, J. (dissenting). In this case, although we would not hesitate to affirm the penalty of dismissal if that had been imposed against respondent and if that were the issue, we must, for the reasons hereinafter expressed, respectfully dissent from the majority holding that an arbitrator exceeds his or her authority by imposing a too lenient penalty, thereby violating the public policy of this state against inappropriate teacher-student relationships.

First, we concede that our colleagues in the Second Department so held (*see Matter of Board of Educ. of E. Hampton Union Free School Dist. v Yusko*, 269 AD2d 445, 446 [2000]). We do not regard this case as persuasive authority, however, for the reasons hereinafter expressed and because it cites only three cases brought pursuant to CPLR article 78 as authority. While CPLR 7803 (3) authorized judicial review of the penalty imposed, the Legislature, in 1994, amended Education Law § 3020-a (5) to specifically provide that judicial review of arbitrator's decisions in teacher disciplinary matters be strictly

limited to the grounds set forth in CPLR 7511 (c) (*see* L 1994, ch 691, § 3). As the majority correctly notes, the sole basis for vacating the penalty was that the Hearing Officer exceeded his power (*see* CPLR 7511 [b] [1] [iii]). That sole issue divides us.

It is settled law that "courts may vacate an arbitrator's award only on the grounds stated in CPLR 7511 (b)" (*Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 6 NY3d 332, 336 [2005]). Moreover, an arbitrator exceeds his or her power "only where the arbitrator's award violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on the arbitrator's power" (*id.* at 336; *accord Matter of North Country Community Coll. Assn. of Professionals [North Country Community Coll.]*, 29 AD3d 1060, 1061-1062 [2006], *lv denied* 7 NY3d 709 [2006]).

To invoke the public policy exception (as the majority does here), "the court must be able to examine an arbitration agreement or an award on its face, and conclude that public policy considerations, embodied in either statute or decisional law, prohibit (1) arbitration of the particular matters to be decided, or (2) certain relief being granted" (*Board of Educ. of City of N.Y. v Hershkowitz*, 308 AD2d 334, 336 [2003], *lv dismissed* 2 NY3d 759 [2004]). In performing this examination, a court "must focus on the result only, and can vacate the award if the arbitration agreement itself violates public policy; if the award intrudes into areas reserved for others to resolve; or if, because of its reach, the award violates an explicit law of this [s]tate. Our analysis cannot change because the facts or implications of a case might be disturbing, or because an employee's conduct is particularly reprehensible" (*Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York*, 94 NY2d 321, 327 [1999]). Judicial intervention concerning the relief granted—i.e., the penalty assessed—can only be justified if "the award itself 'violate[s] a well-defined constitutional, statutory or common law of this [s]tate' " (*Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1, 11 [2002], quoting *Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, supra* at 328). The court's task is to identify an existing public policy " 'embodied in statute or decisional law, [which] prohibit[s] in an absolute sense' " the arbitrator from imposing the penalty of one year's suspension without pay (*Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1, 11-12 [2002], *supra* [emphasis omitted], quoting *Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 631 [1979]). This task cannot successfully be

performed for the reason that there is no absolute prohibition embodied in case law or statute that imposes this prohibition. The reverse is true, as the statute specifically empowers the arbitrator to impose this penalty (*see* Education Law § 3020-a [4]). By affirming Supreme Court's judgment which found the penalty to be "shockingly lenient," the majority fails to observe these principles and fails to give due deference to the arbitrator's decision and seeks to " 'mold the award to conform to their sense of justice' " (*Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 6 NY3d 332, 336 [2005], *supra* [citation omitted]). Accordingly, we would reverse Supreme Court's judgment and dismiss the petition.

Crew III, J., concurs. Ordered that the judgment is affirmed, without costs.