In the Matter of the Arbitration between SHENENDEHOWA CENTRAL SCHOOL DISTRICT BOARD OF EDUCATION, Respondent, and CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., LOCAL 1000, AFSCME, AFL-CIO, LOCAL 864, et al., Appellants. [934 NYS2d 540]—

McCarthy, J.

Respondent Cynthia DiDomenicantonio (hereinafter respondent) was employed by petitioner as a bus driver for nearly 10 years. After respondent was subjected to a random drug and alcohol test that yielded a positive result for marihuana, petitioner terminated her employment. Respondent is a member of respondent Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, Local 864 (hereinafter CSEA). Pursuant to the collective bargaining agreement (hereinafter CBA) between petitioner and CSEA, respondents sought arbitration to resolve a grievance regarding the termination. The issues that the parties jointly presented to the arbitrator were, "Did [petitioner] violate Article IV of the [CBA] when it terminated [respondent] effective November 10, 2009? If so, what shall the remedy be?" The arbitrator determined that respondent tested positive for marihuana, but that petitioner violated the CBA by terminating her. As a remedy, the arbitrator directed that petitioner reinstate respondent as a bus driver, without back pay, but required that she comply with follow-up drug and alcohol testing and an evaluation by a substance abuse professional.

Petitioner commenced this proceeding to vacate the arbitration award. Respondents counterclaimed for an order confirm-

---

defendant's argument that defendant's unjust enrichment was not alleged in the complaint.

ing the award. Supreme Court granted the petition and vacated the award, thereby reinstating petitioner's termination of respondent. Respondents appeal.

Supreme Court should have confirmed the arbitration award. If a matter is submitted to arbitration, reviewing courts should not interpret substantive conditions of the agreement or delve into the merits of the dispute (*see Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100*, 14 NY3d 119, 124 [2010]). "Courts must give deference to an arbitrator's decision and cannot examine the merits of an arbitration award, even if the arbitrator misapplied or misinterpreted the law or facts, but a court may vacate an award" where it " 'violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on the arbitrator's power' " (*Matter of Grasso [Grasso]*, 72 AD3d 1463, 1465 [2010], *lv denied* 15 NY3d 705 [2010], quoting *Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 6 NY3d 332, 336 [2005]; *see Matter of County of Ulster [Ulster County Sheriff's Empls. Assn./Communications Workers of Am., AFL/CIO, Local 1105]*, 75 AD3d 885, 886 [2010]). "[W]here an agreement is 'reasonably susceptible of the construction given it by the arbitrator[ ],' a court may not vacate the award" (*Matter of Albany County Sheriffs Local 775 of N.Y. State Law Enforcement Officers Union, Dist. Council 82, AFSCME, AFL-CIO [County of Albany]*, 27 AD3d 979, 981 [2006], quoting *Matter of National Cash Register Co. [Wilson]*, 8 NY2d 377, 383 [1960]).

In article IV of the CBA, the parties "subscribe[d] to the concept of progressive discipline, except for the most serious offenses" (art IV, § 47 [C] [4]). The CBA provided increasing steps for discipline beginning with written warnings, but it also provided that "[s]uspension without pay or discharge may be invoked with less than two (2) written warnings where the employee's conduct creates a danger to the health, safety or welfare of staff, students and/or the general public . . . A positive result in any required drug or alcohol test is considered such a danger" (art IV, § 47 [C] [4]). Although this provision permitted petitioner to impose a suspension or discharge without the usual progressive discipline, petitioner asserted that it had a zero tolerance policy concerning positive drug tests, thereby mandating discharge. Two of petitioner's administrative employees testified about the zero tolerance policy, stating that it was the basis for respondent's discharge and that they did not consider respondent's prior work history or other circumstances in deciding to discharge her.

Despite testimony about the alleged zero tolerance policy, no

such written policy was produced. In fact, petitioner's written drug testing policy states that a violation "shall be grounds for disciplinary action including, but not limited to, fines, suspension and/or discharge." The written policy also discusses follow-up testing and conditions for when an employee who has violated the policy returns to duty. The arbitrator reasoned that petitioner did not have a written zero tolerance policy; when read in conjunction with the CBA, petitioner's policy permitted either suspension without pay or discharge after a positive drug test result. The arbitrator therefore determined that petitioner violated the CBA by refusing to consider the disciplinary options provided for in petitioner's own policy and the CBA, instead imposing the penalty of discharge as if it were mandatory.

If petitioner intended to implement a zero tolerance policy, it could and should have negotiated with CSEA to include such mandatory language in the CBA. Not having done so, petitioner must abide by the language actually negotiated for and agreed upon with CSEA. As the arbitrator correctly stated, petitioner's *"unilaterally* established [zero tolerance] policy, no matter how consistently enforced by [petitioner,] is not consistent with the *mutually* negotiated [CBA]." The arbitrator's interpretation of the CBA comports with its plain language and ensures that both petitioner and CSEA receive the benefits they bargained for when negotiating that contract.

We acknowledge that a positive drug test is considered a "serious offense[ ]" (art IV, § 47 [A]), because it is explicitly defined in the CBA as "a danger to the health, safety or welfare of staff, students and/or the general public" (art IV, § 47 [C] [4]). Accordingly, written warnings were not required under the CBA when disciplining respondent for a positive drug test, and we do not dispute that petitioner had the option to terminate respondent. The CBA states that "[s]uspension without pay or discharge may be invoked with less than two (2) written warnings" in such circumstances (art IV, § 47 [C] [4]). Although able to dispense with the outlined steps of progressive discipline, petitioner was required to consider the disciplinary options laid out in the CBA for "conduct [that] creates a danger to the health, safety or welfare of staff, students and/or the general public"—"[s]uspension without pay *or* discharge" (art IV, § 47 [C] [4] [emphasis added])—rather than deem discharge mandatory. The arbitrator did not hold that petitioner violated the CBA merely because petitioner discharged respondent; the arbitrator held that petitioner violated the CBA by refusing to exercise any discretion in regard to the punishment to be

imposed, with petitioner instead imposing what it incorrectly believed to be a mandatory termination.[1] As succinctly stated by the arbitrator, "[petitioner], after negotiating a [c]ontract that provides for a range of discipline for a positive drug test, may not change or renounce that [a]greement by unilaterally instituting an automatic discharge for positive drug tests."

Having determined that petitioner violated the CBA, the arbitrator—who was permitted by the parties' statement of the issues to determine a remedy—then found the appropriate penalty for respondent to be reinstatement without back pay, which equated to a suspension of approximately six months without pay. This determination, which did not modify any terms of the CBA (*compare Matter of Kocsis [New York State Div. of Parole]*, 41 AD3d 1017, 1019 [2007]), was rational and fell within the powers granted to the arbitrator (*see Matter of Massena Cent. School Dist. [Massena Confederated School Employees' Assn., NYSUT, AFL-CIO]*, 64 AD3d 859, 864-865 [2009]).

The arbitrator's award reinstating respondent did not violate public policy. Petitioner is reasonably concerned, as are we, about protecting school children from bus drivers who use drugs or alcohol. The United States Supreme Court has, however, held that a similar arbitration award reinstating a driver who failed a drug test "violates no specific provision of any law or regulation. It is consistent with [US Department of Transportation] rules requiring completion of substance-abuse treatment before returning to work" and other related requirements (*Eastern Associated Coal Corp. v Mine Workers*, 531 US 57, 66 [2000]; *see* 49 USC § 31310). Indeed, the arbitrator, as a condition of respondent returning to work, required that she comply with follow-up drug and alcohol testing and obtain a substance abuse evaluation. The arbitrator imposed a suspension, rather than discharge, based upon respondent's employment history of almost 10 years with petitioner, during which time she had a clean disciplinary record, had never previously failed a drug test and had been rated well in her annual evaluations. Additionally, her supervisor testified positively regarding respondent's ability, reliability and reputation.

---

**1.** We disagree with the dissent's statement that if petitioner had the contractual right to terminate respondent then it could not have violated the CBA when it "chose" or "settled on" that option (*see* http://www.dictionary.com, "choose" [accessed Nov. 9, 2011] ["to select from a number of possibilities"]). In fact, petitioner did not exercise any choice. The parties negotiated a contract that included disciplinary options and required petitioner to consider those options. Despite its contractual obligation, petitioner refused to actually consider any option except termination and instead automatically imposed termination as if it were mandated.

The award was not against public policy (*compare Matter of Binghamton City School Dist. [Peacock]*, 33 AD3d 1074, 1076-1077 [2006], *appeal dismissed* 8 NY3d 840 [2007]) and was rational, and the arbitrator did not exceed his powers. Supreme Court should, therefore, have denied petitioner's application to vacate the award and granted respondents' counterclaim to confirm the award (*see Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100*, 14 NY3d at 124-125).

Rose, J.P., and Stein, J., concur.

Kavanagh, J. (dissenting). It is difficult to understand how, on the one hand, the majority can concede that petitioner had the option under the collective bargaining agreement (hereinafter CBA) to discharge respondent Cynthia DiDomenicantonio (hereinafter respondent) for failing a drug test and, on the other, conclude that petitioner violated the CBA when it chose that option and terminated her. These two positions, which are reflected in the arbitrator's decision, appear to be incompatible with each other and do not support any rational analysis of the parties' rights under the CBA.

Here, the arbitrator was asked to answer two questions—the first is whether petitioner violated article IV, § 47 of the CBA when it terminated respondent. If the answer to this question was no—which, in our opinion, it had to be—the inquiry ended and there was no reason to consider the second question, which focused on the remedy to be imposed for a failed drug test.[2]

Petitioner contends, and we agree, that if it had the contractual right under these circumstances to discharge respondent, then it did not violate article IV, § 47 of the CBA when it chose to terminate her. This position is reinforced by the majority's concession that respondent, by testing positive for marihuana, committed a serious offense as that term is used in the CBA and, as a result, did not have a right to progressive discipline. Under the circumstances, why and how it settled on termination of respondent is totally irrelevant and involves collateral considerations that have nothing to do with its rights under the CBA. Simply stated, it is apparent to us that what the arbitra-

---

2. Parenthetically, the arbitrator did not simply find that petitioner violated the CBA by not considering other discipline short of termination. He found that petitioner could not, under the CBA, discharge respondent even though she failed the drug test. In his decision, the arbitrator required, in addition to a positive finding in the drug test, that other circumstances must exist, which, when considered in connection with the failed drug test, amount to "just cause" for respondent's termination. Such a requirement does not exist in the CBA and, by imposing it as a condition to petitioner exercising its option under the CBA, represents a material change in the parties' agreement.

tor chose to do here was not to answer the question posed by the parties for arbitration but, instead, to fashion a resolution of this dispute that he thought was palatable to all involved. While that approach may be commendable, it was not what the parties agreed would be submitted for arbitration and, in doing so, the arbitrator " 'clearly exceed[ed] a specifically enumerated limitation on [his] power' " (*Matter of Grasso [Grasso]*, 72 AD3d 1463, 1465 [2010], *lv denied* 15 NY3d 705 [2010], quoting *Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 6 NY3d 332, 336 [2005]). For these reasons, and for what we believe are sound public policy considerations implicated by petitioner's legitimate concern that school bus drivers not be substance abusers, we believe that the arbitrator exceeded his authority and issued a determination that violates sound public policy.

Malone Jr., J., concurs. Ordered that the order is reversed, on the law, without costs, petition denied, counterclaim granted and arbitration award confirmed. **[Prior Case History: 29 Misc 3d 1231(A), 2010 NY Slip Op 52107(U).]**