In the Matter of the Arbitration between BOARD OF EDUCATION OF THE UNADILLA VALLEY CENTRAL SCHOOL DISTRICT, Appellant, and BRUCE McGOWAN, Respondent. [949 NYS2d 518]—

Spain, J.

Respondent,[1] a 30-year-old tenured teacher employed by petitioner as a social studies teacher and coach, was investigated for sexual harassment during the 2007-2008 school year after petitioner received numerous complaints of inappropriate conduct toward seventh grade female students. At the conclusion of the investigation, in which dozens of students, employees and respondent were interviewed, investigators concluded that respondent had engaged in a pervasive pattern of inappropriate conduct, touching and sexual harassment of a great number of female students[2] on numerous occasions in the prior three to five years. In September 2008, the parties entered into

---

1. Supreme Court granted respondent's request for an anonymous caption. We note that while he was entitled to request a private hearing on the disciplinary charges (*see* Education Law § 3020-a [3] [c]; 8 NYCRR 82-1.9), there is no provision requiring anonymity on judicial review of an arbitration award on such charges (*see* Education Law § 3020-a [5]).

2. The conduct—which the investigation revealed had been directed at girls in grades 7 through 12, both in the classroom and during sports practices and games—included poking and grabbing female students, putting ice down their shirts, touching intimate areas of their bodies, massaging their shoulders and necks, looking at them in an inappropriate manner causing them to feel uncomfortable, and giving them preferential treatment. It does not appear that criminal charges were pursued so as to implicate respondent's termination without a hearing (*see* Education Law § 3020-a [2] [b]).

an agreement regarding discipline for respondent's conduct, in which he agreed to a retroactive suspension without pay, to a reassignment, to forgo his voluntary coaching of school sports, and to the placement of a letter of reprimand in his personnel file in which he admitted engaging in unspecified inappropriate activity and admonishing him for misconduct and conduct unbecoming a teacher. Respondent also agreed to undergo and cooperate with a "psychiatric/psychological examination pursuant to Education Law § 913." In exchange, petitioner agreed not to bring disciplinary charges pursuant to Education Law § 3020-a "with regard to any of the matters involved in the investigation," but retained the right to bring disciplinary charges "alleging incompetency based upon the results of the Education Law [§ ] 913 examination."

Thereafter, respondent was examined by a psychiatrist, Suresh Undavia, in September and October 2008, who issued reports tentatively diagnosing respondent as having a narcissistic personality disorder and adjustment disorder with anxious mood, and recommended further psychological testing and therapy. Based upon that assessment, petitioner filed a disciplinary charge against respondent pursuant to Education Law § 3020-a (1) alleging that he is "mentally disabled from performing [his] job duties" under Education Law § 3012 (2) (b),[3] with the specification: "[a]s outlined in the . . . reports from Dr. Undavia, by reason of your mental condition, you are unfit to perform the job duties of a teacher." Respondent was suspended with pay pending a hearing on the charge (see Education Law § 3020-a [2] [b]).

An extensive hearing was held in 2009 and 2010, at which conflicting medical opinions were offered regarding respondent's mental condition, his ability to return to teaching without reoffending and the level of supervision he would require. Undavia testified that respondent's narcissistic personality disorder and adjustment disorder with anxious mood are mental conditions that interfere with his ability to teach and, if not treated, they could become a mental disability, but that respondent did not then have a mental disability. The psychiatrist further opined that respondent, who lacked insight and failed to appreciate the impropriety of his conduct, was only fit to teach with constant supervision and only if he accepted responsibility

---

**3.** While petitioner reserved the right to bring a charge "alleging incompetency" under Education Law §§ 3020-a and 3012 (2) (b), it actually later brought this single charge of "mental disability." Respondent has not argued that the present charge of mental disability was waived by the agreement, although incompetency and mental disability are distinct grounds.

and received long-term psychotherapy. These diagnoses were "tentative" and he was unable to assess the severity of respondent's condition in the absence of further psychological testing.

By contrast, Nathan Hare, a licensed psychologist, interviewed respondent twice in 2009 and conducted psychological inventories and tests. Hare testified on behalf of respondent that he did not have any mental disorder or personality disorder that would prevent his return to teaching. He recommended continuation of respondent's therapeutic counseling to establish "boundary recognition" and thought it advisable that he have a mentor to assist in his return to the classroom, but did not believe it necessary that the mentor be in the classroom with him. Additionally, respondent's treating psychotherapist, a licensed clinical social worker, opined that respondent was ready to resume teaching and not likely to repeat inappropriate behavior with students if he continued with therapeutic counseling. In rebuttal, Thomas Lazzaro, a licensed psychologist and forensic psychologist who conducted a psychological evaluation and administered psychological tests, testified on behalf of petitioner and was ultimately unable to make a firm diagnosis, opining that respondent had only some characteristics of different personality disorders but not enough for a diagnosis. He agreed with Hare, finding no diagnosable mental or personality disorder, although he testified that respondent had "substantial deficits in judgment, in interpersonal areas . . . and boundary violations" and should only be allowed to return to the classroom under vigilant supervision.

The Hearing Officer issued a written decision concluding that petitioner had failed to meet its burden of establishing that respondent had a mental disability that rendered him unfit to teach, and dismissed the charge (*see* Education Law § 3020-a [4] [a], [b]; *see also* Education Law § 3012 [2] [b]). Petitioner then commenced this proceeding seeking to vacate that determination—an arbitration award—pursuant to CPLR 7511 (b) (*see* Education Law § 3020-a [5]). Supreme Court denied the application to vacate and confirmed the award (*see* CPLR 7511 [e]). Petitioner now appeals.

Pursuant to Education Law § 3020-a (5), judicial review of and authority to vacate a hearing officer's determination of disciplinary charges against a tenured teacher is limited to the grounds set forth in CPLR 7511 (b) (1), including acts in excess of the arbitrator's power (*see Matter of Binghamton City School Dist. [Peacock]*, 33 AD3d 1074, 1076 [2006], *appeal dismissed* 8 NY3d 840 [2007]). "Where, as here, parties are subject to

compulsory arbitration, the award must satisfy an additional layer of judicial scrutiny—it 'must have evidentiary support[4] and cannot be arbitrary and capricious' " (*City School Dist. of the City of N.Y. v McGraham*, 17 NY3d 917, 919 [2011], quoting *Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 214, 223 [1996] [footnote added]; *see Motor Veh. Mfrs. Assn. of U.S. v State of New York*, 75 NY2d 175, 186 [1990]).

Petitioner contends that the medical testimony established respondent's unfitness to teach, and the Hearing Officer's determination to the contrary is irrational and arbitrary and capricious. Initially, the Hearing Officer properly declined to sustain the charge based upon respondent's underlying inappropriate conduct as disclosed in the investigation, given that, in the agreement, petitioner explicitly waived the right to bring charges "with regard to any of the matters involved in the investigation." Instead, petitioner retained the right to pursue charges based upon the results of the Education Law § 913 medical examination and, in fact, petitioner limited the later charge to mental disability under Education Law § 3012 (2) (b). Thus, while respondent's prior underlying inappropriate conduct was certainly relevant to that charge and properly considered by all of the testifying medical experts in their assessments of his mental condition, the prior conduct could not, by itself, meet petitioner's burden of proof on the charge—as it argued at the hearing. Further, the evidence regarding respondent's underlying conduct did not authorize the Hearing Officer to impose discipline in the absence of a finding of guilt on the charge, as petitioner now suggests. Had petitioner initially believed, based upon the results of the investigation, that respondent was unfit to teach, it could have pursued disciplinary charges pursuant to Education Law § 3012 (2) (a) or (b), premised upon the disclosed underlying conduct (*see e.g. Matter of Watt [East Greenbush Cent. School Dist.]*, 85 AD3d 1357, 1358 [2011]); it elected not to do so and, instead, waived the right to bring such charges in its agreement and retained respondent as a tenured teacher in exchange for certain concessions from him.[5] Consequently, at petitioner's election, the sole charge against respondent was limited to his alleged mental disability rendering him unfit to teach, and the Hearing Officer properly confined his analysis to that charge.

---

**4.** The Court of Appeals, in compulsory arbitration award cases, has employed the "evidentiary support" standard rather than a substantial evidence standard (*City School Dist. of the City of N.Y. v McGraham*, 17 NY3d at 919 [internal quotation marks omitted]; *see Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d at 223).

**5.** Notably, the agreement did not require respondent to continue with therapeutic counseling or treatment as a condition of his continued employ-

On the merits, Supreme Court properly confirmed the arbitration award dismissing the charge (*see* CPLR 7511 [e]). While the term "mental disability" (Education Law § 3012 [2] [b]) is not defined by statute or controlling case law, none of the medical experts found that respondent had such a disability. The Hearing Officer expressly credited Hare's testimony that respondent did not have a personality disorder or mental disability that would render him unfit to teach, and found no credible basis to support a contrary conclusion. Accepting that credibility determination, as we must (*see Matter of Watt [East Greenbush Cent. School Dist.]*, 85 AD3d at 1358; *see also Matter of Nuchman v Klein*, 95 AD3d 645, 646 [2012]), we find that the dismissal of the charge has evidentiary support and cannot be said to be irrational or arbitrary and capricious (*see City School Dist. of the City of N.Y. v McGraham*, 17 NY3d at 919-920).

Contrary to petitioner's contentions, the arbitrator's award did not violate public policy so as to have "exceeded his power" (CPLR 7511 [b] [1] [iii]; *see Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 6 NY3d 332, 336 [2005]). Petitioner claims that the award is irrational and violated the public policy of protecting children from harmful and offensive conduct by adults, particularly in an educational setting (*see Matter of Watt [East Greenbush Cent. School Dist.]*, 85 AD3d at 1359; *Matter of Binghamton City School Dist. [Peacock]*, 33 AD3d at 1076), because the Hearing Officer found that respondent was not mentally unfit, yet also concluded that he needed continuing mental health counseling and supervision. In fact, what the Hearing Officer concluded is that, while the credible testimony did not establish that respondent has a mental disability rendering him unfit to teach, as charged, the medical experts all concluded that respondent's underlying conduct strongly suggested the need for continued counseling and closer supervision than normally provided to teachers. This conclusion did not permit the Hearing Officer to sustain the charge, which he found had not been proven, nor would it authorize the imposition of a penalty or remedial measures for that unproven charge or empower a finding of guilt based on a charge not before him (*see* Education Law § 3020-a [4]). Given the conclusion that petitioner failed to prove the sole charge presented (*cf. Matter of Binghamton City School Dist. [Peacock]*, 33 AD3d at 1075-1076), it certainly cannot be a violation of public policy to decline to impose a penalty or to require counseling or supervision (*see City School Dist. of the City of N.Y. v Mc-*

---

ment, or to follow any recommendations that might emerge after the agreed-upon Education Law § 913 medical examination.

*Graham*, 17 NY3d at 919-920; *Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72, 80 [2003]; *Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1, 6-7 [2002]).

Due to petitioner's decision to enter into an agreement waiving a myriad of appropriate disciplinary charges of general unfitness to teach—such as neglect of duty, immoral character or conduct unbecoming a teacher (*see* Education Law § 3012 [2] [a], [b])—the charge before the Hearing Officer was limited to unfitness to teach by reason of a mental condition or disability. As the Hearing Officer rationally concluded that this charge was not proven, we affirm Supreme Court's order denying petitioner's application to vacate the award.

Peters, P.J., Malone Jr. and Kavanagh, JJ., concur. Ordered that the order is affirmed, without costs.