OPINION OF THE COURT
Michael D. Stallman, J.
This combined CPLR article 78 and article 75 proceeding concerns acts ostensibly taken under Civil Service Law § 72 for placement of petitioner, a tenured civil service worker, on involuntary leave for medical disability and a parallel grievance procedure under the collective bargaining agreement (COBA) between the State of New York and the Public Employees Federation, petitioner’s union, to terminate petitioner’s employment.
Petitioner Patrick McShane is an employee of respondent New York State Department of Transportation (DOT). Respondents allege that, on October 10, 2012, DOT acted to place petitioner on involuntary leave pursuant to Civil Service Law § 72, and then, on November 29, 2012, proposed to terminate petitioner’s employment based on disciplinary charges pursuant to the COBA and suspended petitioner without pay. As required by the COBA, an arbitration hearing was held regarding petitioner’s proposed termination. In an arbitration award dated April 15, 2013, the arbitrator sustained petitioner’s grievance in part and directed that DOT reinstate petitioner. On April 18, 2013, respondents allegedly notified petitioner that he was still on leave pursuant to Civil Service Law § 72 and that he would not be reinstated until he did certain things. In this combined proceeding, petitioner seeks: (1) pursuant to CPLR article 75, to confirm the arbitration award; and (2) pursuant to CPLR article 78, to annul the determination placing him on involuntary leave. Petitioner seeks an order:
1. directing respondents to reinstate petitioner to his former position and pay him back pay and benefits from April 15, 2013; and
2. declaring that respondents’ refusal to reinstate petitioner is arbitrary and capricious and violates Civil Service Law § 72. *323 Respondents move to vacate the arbitration award and argue that the petition should be dismissed on the grounds that it is time-barred, that petitioner did not exhaust his administrative remedies, and that DOT’s decision to place petitioner on involuntary leave was not arbitrary and capricious.[1]
Background
Petitioner has been employed by DOT for 24 years, most recently as a Civil Engineer I. The terms and conditions of petitioner’s employment are governed by the COBA. On November 12, 2011, the Investigations Bureau allegedly received a complaint that petitioner “is arriving late every day; absent often; is performing non-work related activities . . . ; is rude and intimidating, and poses a safety hazard with his messy cluttered cubicle.” (LaMarco aff, exhibit A.) In response to these allegations, DOT conducted a review of petitioner’s email account for the period of March 1, 2012 through August 24, 2012, and DOT allegedly found that 3,000 of the 3,490 emails on petitioner’s computer were nonbusiness related; that petitioner had accessed the Internet for approximately 66 hours of personal Internet use; and that petitioner accessed websites approximately 76 times where the subject dealt with explosives. (Id.) In addition, petitioner’s coworkers, in interviews, allegedly revealed concerns for their safety with regard to petitioner’s purported longtime continuous acts of intimidation and threats. (LaMarco aff, exhibit B.) One such purported consistent threat was that petitioner “would push certain co-workers [i]n front of the [s]ubway and then apologize.” (Id. [internal quotation marks omitted].) One staff member allegedly indicated a fear that petitioner is capable of “coming into the workplace with a gun and shooting people.” (Id.)
According to DOT, it pursued two courses of action: (1) interrogation of petitioner and preferring of charges against petitioner pursuant to article 33 of the COBA and (2) placing petitioner on involuntary leave.
Allegations Related to the Article 75 Proceeding
On October 10, 2012, DOT sent petitioner a letter directing petitioner to report to headquarters “for an interrogation pursuant to Article 33 of the [COBA].” (LaMarco aff, exhibit C.) On October 15, 2012, petitioner allegedly reported for the inter *324 rogation. (Id.) On November 29, 2012, by statement of charges, DOT notified petitioner that DOT proposed to terminate petitioner’s employment pursuant to disciplinary procedures in article 33 of the COBA and suspended petitioner without pay effective that day. (Petitioner’s exhibit D.)
In the statement of charges, DOT listed four charges against the petitioner which were allegedly violations of employment regulations and/or the Penal Law: (1) excessive Internet use for personal reasons between March 1, 2012 and August 24, 2012; (2) submission of false time records due to underlying facts in charge 1; (3) failure to report and replace employee ID after it became inoperable on July 27, 2012; and (4) an altercation on December 1, 2011 with a fellow employee in which petitioner allegedly accosted the employee, used inappropriate language, and attempted to entice the employee into physical confrontation. (Id.)
On March 15, 2013, an arbitration hearing was held in New York County before Arbitrator Gayle A. Gavin. On April 15, 2013 Arbitrator Gavin issued her opinion and award, stating, “[t]he grievant is denied in part and sustained in part. The charges are proved. The penalty is modified to a time-served suspension. [DOT] is directed to reinstate the grievant forthwith.” (Petitioner’s exhibit at 9.)
Allegations Related to the Article 78 Proceeding
On October 10, 2012, concurrently with the letter directing the COBA interrogation, DOT sent petitioner a separate letter notifying petitioner that he was being placed on leave with pay. The letter stated,
“This is to advise you that you are currently being placed on Administrative Leave with Pay effective beginning of business Wednesday October 10, 2012.
“You will remain on such leave until otherwise advised by DOT Management. During the leave period, you are not to enter the grounds of the [DOT] or any of its sites without specific authorization from DOT Management. Should you enter without authorization, you will be subject to arrest as a trespasser and also subject to disciplinary action for insubordination.
“In addition, you are directed to not have contact with other staff regarding any matter pertinent to your job.” (LaMarco aff, exhibit F.)
On October 18, 2012, DOT sent petitioner a letter with the heading “Section 72 Employee Notification” notifying petitioner *325 that DOT had requested petitioner be examined by two health professionals. The letter stated in part,
“This letter is to advise you that the [DOT] has requested that you be examined by Employee Health Services to determine your fitness to perform the full duties of your position as a Civil Engineer I. . . .
“If you are taking any medications, please bring them with you to the examination. Part of the examination is a fasting and blood test. This will require that you fast from midnight the night prior to the examination. . . .
“You are also directed to comply with all medical standards and procedures associated with the examinations that are determined to be necessary by the examining physician. Failure to comply with this directive will be regarded as insubordination and may make you subject to discipline.” (Petitioner’s exhibit B.)
On November 7, 2012 and November 27, 2012, a physician and a psychologist of the New York State Employee Health Services examined petitioner as per the October 18, 2012 letter. On December 11, 2012, Dr. Richard A. Ciulla, Medical Director of Employee Health Services advised DOT of the results of petitioner’s examination. The letter stated,
“At your request [petitioner] was evaluated by Dr. Arthur Kurtz on November 7, 2012 and by Dr. John Wapner, psychologist on November 27, 2012, pursuant to Section 72 of the Civil Service Law.
“Based on those evaluations, [petitioner] is fit to perform the essential duties of a Civil Engineer I. However, at this time, Dr. Wapner is unable to make a determination whether [petitioner] represents a danger in the work place as he was evasive during psychological testing and as there was insufficient data regarding the intent of his extensive use of the internet while at work.” (Petitioner’s exhibit C.)
On April 18, 2013, DOT sent petitioner a letter notifying him that he would remain on leave pursuant to Civil Service Law § 72. The letter stated,
“The New York State Department of Transportation, Employee Relations Office is in receipt of Arbitrator Gavin’s decision dated April 15, 2013. In it, the arbitrator indicates a modified penalty of a *326 time-served suspension and reinstatement to the workplace as a result of disciplinary charges issued to you on November 29, 2012.
“However, this letter is to advise you that you are still on leave in accordance with Civil Service Law, Section 72.5 as a result of medical documentation provided by Employee Health Services (EHS) on December 11, 2012 which indicated an inability to determine whether you present a danger to the workplace.
“You will remain on such leave until you request a re-evaluation by EHS and [are] subsequently deemed competent to perform your duties in a manner that is safe for yourself, co-workers and the public. As stated to you previously in a letter dated October 10, 2012, you are not to enter the grounds of the [DOT] or any of its sites without specific authorization from DOT Management. Should you enter without authorization, you will be subject to arrest as a trespasser and also subject to disciplinary action for insubordination.
“In addition, you are directed not to have contact with other staff regarding any matter pertinent to your job.” (LaMarco aff, exhibit I.)
Instant Proceeding
On May 1, 2013, petitioner commenced this proceeding. On June 20, 2013, respondents cross-moved to vacate the arbitration award pursuant to article 75 and to dismiss the article 78 petition. Petitioner served his reply on July 3, 2013. Respondents served their surreply on July 11, 2013. After conference by the court, including discussion of procedural anomalies occasioned by the combined proceeding and the cross motion, and the Civil Service Law § 72 administrative process underlying the article 78 relief, respondents served their answer on September 10, 2013. The proceeding was finally submitted for determination on October 10, 2013.
Discussion
Respondents argue that the branch of the petition that seeks to confirm the arbitration award should be dismissed, and the arbitration award should be vacated, because the arbitrator’s determination to reduce petitioner’s penalty from dismissal to a time-served suspension was irrational. Respondents argue that the branch of the petition that seeks relief under CPLR article *327 78 should be dismissed because (1) the State of New York is not a proper respondent in an article 78 proceeding;[2] (2) petitioner has not shown that DOT’s refusal to reinstate him is arbitrary and capricious; (3) petitioner’s article 78 claim is time-barred; and (4) petitioner’s article 78 claim is barred for failure to exhaust administrative remedies.
Article 75 Proceeding
Respondents argue that the award should be vacated because the arbitrator’s determination was irrational. Respondents contend that, because the arbitrator found that DOT had proved all four charges, two of which also purportedly constituted crimes under state law,[3] and because of petitioner’s prior disciplinary history, the only rational penalty is petitioner’s dismissal.
“Because of the great degree of deference afforded to arbitration awards, the available grounds for vacating them are extremely limited. Mere errors of law or fact reflected in an arbitration award are insufficient for a court to overturn it, since ‘the courts should not assume the role of overseers to mold the award to conform to their sense of justice.’ A court may only disturb the award ‘when it violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on an arbitrator’s power.’ ” (Matter of McIver-Morgan, Inc. v Dal Piaz, 108 AD3d 47, 51 [1st Dept 2013] [citations omitted].)
Here, the arbitrator’s determination to reduce petitioner’s penalty to a time-served suspension was not totally irrational. The arbitrator analyzed and evaluated all of the relevant evidence, including petitioner’s 24 years of service, two written counseling memoranda for petitioner’s prior disciplinary history—one for verbal and physical assault in 1993 and one for driving state vehicles while his license was suspended in 1997, as well as the four charges against him and found that terminating petitioner’s employment would be an excessive penalty given a “good disciplinary record for a long-term employee.” (Petitioner’s exhibit E at 8-9.) The arbitrator also noted that “while dismissal in this instance is viewed as excessive, any future similar misconduct will not be treated as leniently.” (Id. at 9.)
*328 “By submitting the issue of [petitioner’s] conduct to arbitration, the parties placed upon the arbitrator the responsibility of passing on the implications of [petitioner’s] offensive conduct under the [COBA]. We must honor the choice of the parties to have their controversy decided in that forum.” (Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d 321, 329 [1999].) “That reasonable minds might disagree over what the proper penalty should have been does not provide a basis for vacating the arbitral award or refashioning the penalty.” (City School Dist. of the City of N.Y. v McGraham, 17 NY3d 917, 920 [2011].) Thus, courts have upheld an arbitrator’s determination that an employee be suspended instead of dismissed. (See Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d 1 [2002]; Matter of New York City Tr. Auth. v Transport Workers’ Union of Am., Local 100, AFL-CIO, 6 NY3d 332 [2005]; City School, 17 NY3d at 918.) Respondents have not demonstrated any other statutory basis for vacating the arbitration award. The penalty imposed by the arbitrator does not shock the judicial conscience. Therefore, the article 75 petition is granted and the arbitration award is confirmed.
Article 78 Proceeding
DOT argues that petitioner has not shown that DOT’s refusal to reinstate him is arbitrary and capricious. The standard of review for an article 78 proceeding is not only whether a determination was arbitrary and capricious, but “ ‘whether a determination was made in violation of lawful procedure, was affected by an error of law or ... an abuse of discretion.’ ” (Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359, 363 [1986], quoting CPLR 7803 [3].) Petitioner contends that respondents violated the lawful procedure of Civil Service Law § 72 when DOT acted to place petitioner on administrative leave on October 10, 2012 and thereafter. Respondents set forth defenses of expiration of the statute of limitations and failure to exhaust administrative remedies, which ordinarily would be analyzed before reaching the merits. However, the court’s determinations of these defenses can be understood only in the context of the court’s analysis of the statutory framework and respondents’ acts purportedly taken pursuant to the statute.
A.
Civil Service Law § 72 (5) authorizes an employer to place an employee on immediate leave without pay if the employer has *329 probable cause to believe that “the continued presence of the employee on the job represents a potential danger to persons or property.”
“If [the] employee is finally determined not to be physically or mentally unfit to perform the duties of his or her position, he or she shall be restored to his or her position and shall have any leave credits or salary that he or she may have lost because of such involuntary leave of absence restored to him or her.”

(Id.)

Civil Service Law § 72 (1) sets forth the mandatory procedure. The sequence of steps for proceeding under Civil Service Law § 72 (1), relevant to this case, are:
• the employer must provide written notice of the facts providing the basis for the proposed leave and judgment that the employee is not fit to perform the duties of his position, the date on which the leave is to commence, and the employee’s rights under the procedure served by first class, registered, or certified mail return receipt requested, upon the employee;
• a medical examination conducted by a medical officer selected by the civil service department or municipal commission having jurisdiction to determine whether employee is fit to perform the duties of his position;
• the employee has 10 working days from the service of the notice to object to the imposition of the proposed leave of absence and request a hearing filed by the employee personally or by first class or registered mail, return receipt requested; and
• the employee shall be entitled to draw all accumulated, unused sick leave, vacation, overtime and other time allowances standing to his credit while on leave.
“Because of the significant due process implications of [section 72], strict compliance with its procedures is required.” (Matter of Breen v Gunn, 137 AD2d 685, 685 [2d Dept 1988].)
The statutory scheme of section 72 sets forth a mandatory step-by-step procedure; DOT did not follow it. Here, DOT placed petitioner on an involuntary leave of absence with pay (LaMarco aff, exhibit F), instead of a leave of absence without pay, as required under Civil Service Law § 72 (5).[4] Whether the leave with pay was a mistake or an exercise of compassion or both, *330 need not be determined here. In fact, petitioner continued to receive pay until November 29, 2012, when he was suspended without pay pursuant to the COBA. (Petitioner’s exhibit D.)
The DOT notice of October 10, 2012 that placed petitioner on leave does not state the reasons why petitioner was being placed on involuntary leave. The October 10, 2012 letter does not cite Civil Service Law § 72 (5). It neither states “the facts providing the basis for the proposed leave and judgment that the employee is not fit to perform the duties of his position” nor contains any reference to petitioner’s “dangerousness” or “fitness to perform duties.” (LaMarco aff, exhibit F.) There is nothing in the October 10, 2012 letter to indicate that DOT was placing petitioner on leave without pay pursuant to Civil Service Law § 72 (5). The ambiguity of the October 10, 2012 leave letter was compounded by the October 10, 2012 letter directing the COBA interrogation.
DOT did not send petitioner any written information regarding any aspect of his fitness to perform his duties until eight days later, on October 18, 2012. (Petitioner’s exhibit B.) However, the October 18, 2012 letter also did not provide proper notice as required by statute. Although the letter includes “Section 72 Employee Notification” in the heading and states that petitioner would be examined by Employee Health Services to determine his fitness to perform the duties of a Civil Engineer I, the letter does not state any reasons. Neither does the letter refer to any determination that petitioner’s presence on the job would either represent a potential danger to persons or property, or would severely interfere with DOT operations. (Id.)
DOT alleges that it included a copy of the statute with the October 18, 2012 letter; relying on Matter of Smith v New York State Dept. of Labor (191 Misc 2d 195 [Sup Ct, Albany County 2002]), DOT contends this was sufficient to meet the statutory notification requirement. DOT’s reliance on Smith is misplaced. In Smith, the petitioner was immediately involuntary removed from her workplace pursuant to Civil Service Law § 72 (5) on May 3, 2001. (Id. at 196.) In a letter dated May 8, 2001, the petitioner’s employer notified petitioner of the fact that she had been placed on leave effective May 3, 2001, the specific reasons for the action, and provided petitioner with a copy of Civil Service Law § 72. (Id.) The court found that “attaching a copy of the entire Civil Service Law § 72 sufficed to meet the statutory requirement that ‘Such notice shall also inform the employee of his or her rights under this procedure.’ ” (Id. at 198.)
*331 Unlike the employer in Smith, DOT did not state in the October 18, 2012 letter that petitioner was being placed on leave, that the leave began on October 10, 2012 (or any other later time) or any reasons for such leave. In fact, there is nothing linking the October 18, 2012 letter to the October 10, 2012 leave letter. Even if providing a copy of the statute may have satisfied respondents’ obligation to inform petitioner of his statutory rights, DOT still failed to meet the other statutory requirements. Thus, merely providing a copy of the statute with the October 18, 2012 letter did not satisfy the notice requirements of the statute.
“Due to the respondent’s failure to comply with the notice requirements of the statute, petitioner’s purported placement on a leave of absence is a nullity.” (Matter of Briggs v Scoralick, 147 AD2d 694, 695 [2d Dept 1989].) Irrespective of whether respondents had a rational basis in fact for taking the acts they took, that is not a defense to the issue of whether or not respondents followed the procedures provided by Civil Service Law § 72. For the reasons stated, the court finds that respondents did not follow the mandated procedures of Civil Service Law § 72; the current leave without pay is therefore violative of lawful procedure. Thus, the April 18, 2013 determination must be annulled, and the matter must be remanded to the agency for appropriate action pursuant to Civil Service Law § 72.
Petitioner was placed on administrative leave with pay effective October 10, 2012, and then suspended without pay effective November 29, 2012. However, the arbitrator directed that petitioner be reinstated forthwith on April 15, 2013. From April 15, 2013, the only suspension remaining in place was petitioner’s suspension purportedly pursuant to Civil Service Law § 72 (5). Because the suspension pursuant to Civil Service Law § 72 is annulled, petitioner is entitled to back pay from April 15, 2013 to the extent that he was not paid during this period (see Briggs, 147 AD2d at 695 [“petitioner is entitled to recover back pay for part of the period during which he was suspended”]).
The fact that the arbitrator determined that petitioner should be reinstated does not necessarily lead to the conclusion that petitioner must be allowed to return physically to the workplace. Given the serious allegations against petitioner regarding coworkers being concerned for their safety, the proven charge of petitioner’s altercation with a coworker, and the circumstance that the psychologist was “unable to make a determination *332 whether [petitioner] represents a danger in the work place as he was evasive during psychological testing” (petitioner’s exhibit C), DOT has shown a rational basis for its belief that the petitioner may be a danger in the workplace. Thus, DOT need not permit petitioner to return to the workplace, and DOT is free immediately to begin the Civil Service § 72 process anew.
B.
An article 78 proceeding must be brought within four months from when an administrative determination becomes final and binding upon a petitioner. (CPLR 217.) “An administrative determination becomes final and binding when [a] petitioner seeking review has been aggrieved by it.” (Matter of Yarbough v Franco, 95 NY2d 342, 346 [2000] [internal quotation marks omitted].)
Respondents argue that the relevant determination of this article 78 proceeding for statute of limitations purposes was DOT’s placement of petitioner on involuntary leave pursuant to Civil Service Law § 72 (5) on October 10, 2012; therefore, respondents maintain that the proceeding is time-barred. However, DOT created ambiguity as to whether petitioner was placed on involuntary leave under Civil Service Law § 72 (5) and as to whether the leave letter dated October 10, 2012 was final and binding. As discussed previously, respondents never properly placed petitioner on section 72 leave.
“[F]or the purposes of the commencement of the statutory period, the petitioner cannot be said to be aggrieved by the mere issuance of a determination when the agency itself has created an ambiguity as to whether or not the determination was intended to be final. . . . Indeed, fundamental fairness would seem to compel the conclusion that a petitioner should not be held to have been dilatory in challenging a determination of which he was not aware.” (Matter of Biondo v New York State Bd. of Parole, 60 NY2d 832, 834 [1983] [citation omitted].)
“If an agency has created ambiguity or uncertainty as to whether a final and binding decision has been issued, ‘the courts should resolve any ambiguity created by the public body against it in order to reach a determination on the merits and not deny a party his day in court.’ ” (Matter of Carter v State of N.Y., Exec. Dept., Div. of Parole, 95 NY2d 267, 270-271 [2000] [citations omitted].)
*333 Because of the ambiguity as to whether DOT placed petitioner on involuntary leave pursuant to Civil Service Law § 72 (5), DOT has not demonstrated that petitioner should have commenced an article 78 proceeding within four months from the October 10, 2012 leave letter.
C.
Respondents argue that petitioner did not exhaust his administrative remedy of requesting a hearing to contest his placement on leave within 10 days after being placed on leave on October 10, 2012. Civil Service Law § 72 (1) provides: “An employee shall be allowed ten working days from service of the notice to object to the imposition of the proposed leave of absence and to request a hearing.”
As discussed previously, respondents did not give petitioner proper notice that he was being placed on leave without pay as required by section 72. Because respondents placed petitioner on a leave with pay and never complied with the requisite notice procedure, the requirement for petitioner to request a hearing within 10 working days was never triggered. The October 10, 2012 leave letter, by its content and lack of required content, created an ambiguity as to what determination was actually being made and as to what statutory basis it had, especially when read together with the other October 10, 2012 letter, the one directing a COBA interrogation. Moreover, one might assume that petitioner had no interest in challenging his being placed on a leave with pay. Given the ambiguity of the October 10, 2012 leave letter, DOT has not demonstrated that the petitioner failed to exhaust administrative remedies.
Conclusion
For the reasons stated above, the petition to confirm the arbitration award dated April 15, 2013 is granted, and the award shall be confirmed; the respondents’ cross motion to vacate the arbitration award is denied; petitioner’s request for back pay and benefits from April 15, 2013 is granted; the determination dated April 18, 2013 is annulled without prejudice to the merits; and the matter is remanded to DOT for appropriate action under Civil Service Law § 72, including but not limited to taking each of the steps and giving the notice required by the statute in the order therein provided.
It may seem anomalous that someone in petitioner’s position, *334 who has not fully cooperated with the psychological evaluation, can be restored to the payroll even though he is not performing his job duties. The anomaly results from respondents’ choice— permitted by COBA and statute—to have brought the arbitration in parallel with the purported section 72 involuntary leave proceeding. Each is governed by a different legal framework; each has different standards and procedures. Nevertheless, respondents have their remedy: they can follow the mandated statutory procedures required by Civil Service Law § 72.
Settle order and judgment.[5]

. Respondents included in their answer, filed on September 10, 2013, the same grounds for dismissal raised in their original cross motion to dismiss the article 78 petition, filed on June 20, 2013.

. Pursuant to the so-ordered stipulation dated July 25, 2013, petitioner discontinued the proceeding as to the “State of New York only.”

. There is no indication that petitioner was criminally prosecuted.

. An employee on leave pursuant to section 72 (5) does not receive pay and is only “entitled to draw all accumulated unused sick leave, vacation, overtime and other time allowances standing to his . . . credit.” (Civil Service Law § 72 [5].)

. The time between this decision and the settlement of the final judgment gives both sides an opportunity to discuss and implement procedures to be taken on remand to the agency, including cooperating in arranging petitioner’s submission to medical evaluation. However, the need to settle judgment does not restrict the agency from beginning section 72 proceedings immediately.