OPINION OF THE COURT
 

 Wesley, J.
 

 The issue on this appeal by the State is whether an arbitral award reinstating a correctional officer should be vacated because it violates a well-defined and explicit public policy of this State. The parties concede that the grievance procedure here was the proper subject of arbitration, and do not question the power of the arbitrator to decide this proceeding and reinstate the employee. Furthermore, there is no explicit public policy of this State which proscribes the reinstatement of an employee following a not guilty determination of the charges lodged against him. Therefore we conclude that the award should not be vacated and affirm the Appellate Division order so holding.
 

 Petitioner Edward Kuhnel is a correctional officer employed by the Department of Correctional Services. He was suspended from duty because on December 10, 1996 — the 55th anniversary of Hitler’s declaration of war on the United States — he flew a Nazi flag from the front porch of his home. Kuhnel’s display of the flag was reported by several newspapers throughout the State.
 

 The notice of discipline charged Kuhnel with violating sections 2.1 and 2.7 of the employee manual, which relate to the conduct and activities of Department employees. Section 2.1 (“Personal Conduct”) states:
 

 “No employee, whether on or off duty, shall so comport himself as to reflect discredit upon the Department or its personnel.”
 

 Section 2.7 (“Affiliations”) states:
 

 “An employee shall not join or otherwise affiliate himself with any organization, body, or group of persons when such association or affiliation will place his personal interest or interest as a member of such group in conflict with or otherwise interfere
 
 *325
 
 with the impartial and effective performance of his duties as an employee.”
 

 The notice also indicated that Kuhnel’s actions “have endangered the safety and security of all facilities in the New York State Department of Correctional Services.”
 

 Pursuant to the grievance procedure outlined in the collective bargaining agreement between the correctional officers’ union and the State, Kuhnel’s suspension was submitted to arbitration. Both parties agreed that the arbitration procedure would be final and binding. The arbitrator concluded that the Department had not sustained its burden of proof, determined that Kuhnel was not guilty of violating the charges contained in the notice of discipline, and reinstated Kuhnel with full back pay and benefits.
 

 With regard to the charge that Kuhnel violated section 2.1, the arbitrator engaged in a three-part balancing test, weighing the Department’s business interest in security and management of an inmate population against Kuhnel’s off-duty misconduct. The arbitrator concluded that there was no nexus between the off-duty misconduct and Kuhnel’s employment absent evidence that his conduct harmed the Department’s business, adversely affected Kuhnel’s ability to perform his job, or caused co-workers not to work with him. The arbitrator noted that in every year but one during Kuhnel’s 15 years with the Department, his evaluations were either “excellent” or “outstanding.” Thus, according to the arbitrator, the projection of possible harm, as opposed to evidence of actual harm, was not enough to permit restriction of the employee’s symbolic free speech or regulation of his off-duty conduct. Regarding the second charge, the arbitrator determined that other than flying the flag, the State provided no evidence of Kuhnel’s affiliation with the Neo-Nazi party’s objectives or activities. He was not shown to have financially contributed to this party, attended meetings, distributed literature or espoused its philosophy.
 

 Petitioners commenced this CPLR article 75 proceeding to confirm the arbitration award; respondents cross-petitioned to vacate the award on the grounds that it was irrational and violated public policy. Supreme Court granted the petition to confirm the award and denied the cross petition.
 

 The Appellate Division, with two Justices dissenting, affirmed. The majority held that the award was rational and did not violate a strong public policy of this State. In analyzing the public policy challenge, the majority determined that it could
 
 *326
 
 not invade the province of the arbitrator and thus could examine only the arbitration agreement or award, without engaging in fact finding. It then reviewed the collective bargaining agreement and concluded that KuhneFs reinstatement “is expressly authorized under the parties’ agreement” (255 AD2d 54, 57). Turning to the award, the majority concluded that there is no public policy of the State which prohibits, in an absolute sense, the presence within our prison system of those who “embrace bigoted views as evidenced by their public speech”
 
 (id.,
 
 at 57). The majority noted that it was constrained by law from invoking “public policy considerations as a basis for usurping the role of the arbitrator and resolving the underlying dispute on the merits”
 
 (id.,
 
 at 58). The dissent balanced KuhneFs rights to freedom of speech against the State’s legitimate concern for security within its prisons, and concluded that the arbitration award violates a strong public policy of the State against employees within the prison system “who affiliate with racist groups” (id., at 60).
 

 Because our jurisprudence has carefully limited the invocation of public policy concerns as a basis for usurping the role of an arbitrator and determining a dispute on the merits, we affirm.
 

 Collective bargaining agreements commonly provide for binding arbitration to settle contractual disputes between employees and management. In circumstances when the parties agree to submit their dispute to an arbitrator, courts generally play a limited role. Courts are bound by an arbitrator’s factual findings, interpretation of the contract and judgment concerning remedies. A court cannot examine the merits of an arbitration award and substitute its judgment for that of the arbitrator simply because it believes its interpretation would be the better one. Indeed, even in circumstances where an arbitrator makes errors of law or fact, courts will not assume the role of overseers to conform the award to their sense of justice
 
 (see, Matter of Sprinzen [Nomberg],
 
 46 NY2d 623, 629-631;
 
 see also, United Paperworkers Intl. Union v Misco, Inc.,
 
 484 US 29, 38;
 
 International Bhd. of Elec. Workers v Niagara Mohawk Power Corp.,
 
 143 F3d 704, 714).
 

 Despite this deference, courts may vacate arbitral awards in some limited circumstances. A court may vacate an award when it violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on an arbitrator’s power under CPLR 7511 (b) (1)
 
 (Matter of Board of Educ. v Arlington Teachers Assn.,
 
 78 NY2d 33, 37).
 

 
 *327
 
 In this case, the State argues only the public policy exception as the basis for vacating the award. In this regard, a court may vacate an arbitral award where strong and well-defined policy considerations embodied in constitutional, statutory or common law prohibit a particular matter from being decided or certain relief from being granted by an arbitrator (see,
 
 Matter of Sprinzen [Nomberg], supra,
 
 at 631;
 
 see also, Grace & Co. v Local Union 759,
 
 461 US 757, 766;
 
 United Paperworkers Intl. Union v Misco, Inc., supra,
 
 at 43). The focus of inquiry is on the
 
 result,
 
 the award itself (see,
 
 International Bhd. of Elec. Workers v Niagara Mohawk Power Corp., supra,
 
 at 716).
 

 The public policy exception has its roots in common law, where it is well settled that a court will not enforce a contract that violates public policy (see,
 
 Szerdahelyi v Harris,
 
 67 NY2d 42, 48;
 
 McConnell v Commonwealth Pictures
 
 Corp.,7 NY2d 465, 469;
 
 Sternaman v Metropolitan Life Ins. Co.,
 
 170 NY 13, 19,
 
 rearg denied
 
 170 NY 616). A court, however, may not vacate an award on public policy grounds when vague or attenuated considerations of a general public interest are at stake. Courts shed their cloak of noninterference where specific terms of the arbitration agreement violate a defined and discernible public policy
 
 (see, Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,
 
 40 NY2d 774, 777;
 
 United Paperworkers Intl. Union v Misco, Inc., supra,
 
 at 43); where an arbitrator exceeds his or her legal authority
 
 (see, Matter of Cohoes City School Dist. v Cohoes Teachers Assn., supra,
 
 at 777;
 
 Matter of Aimcee Wholesale Corp. [Tomar Prods.],
 
 21 NY2d 621, 629); or where the final result creates an
 
 explicit
 
 conflict with other laws and their attendant policy concerns
 
 (see, United Paperworkers Intl. Union v Misco, Inc., supra,
 
 at 43;
 
 International Bhd. of Elec. Workers v Niagara Mohawk Power Corp., supra,
 
 at 716).
 

 Simply put then, the issue before this Court is not whether we agree with the arbitrator’s assessment of the evidence, interpretation of the contract or reasoning in fashioning the award. We are not authorized to revisit those questions. We must focus on the result only, and can vacate the award if the arbitration agreement itself violates public policy; if the award intrudes into areas reserved for others to resolve; or if, because of its reach, the award violates an explicit law of this State. Our analysis cannot change because the facts or implications of a case might be disturbing, or because an employee’s conduct is particularly reprehensible.
 

 Here, the parties concede that this disciplinary grievance procedure was the proper subject of arbitration. From the
 
 *328
 
 onset, the action was litigated, and the rights of the parties determined, under the auspices of the collective bargaining agreement; The collective bargaining agreement reflects the usual provisos regarding arbitration proceedings: that arbitration is the appropriate venue for resolving disciplinary matters, and that the arbitrator’s decision shall be final and binding upon the parties. The parties agreed to arbitrate this matter; they further agreed to accept as binding the arbitrator’s decision.
 

 Moreover the parties do not question the power of the arbitrator to decide this proceeding or fashion the award. Indeed, the arbitrator’s award — reinstatement of Kuhnel— derives its legitimacy from the collective bargaining agreement and the dispute as framed, and submitted, by the parties
 
 (see, United Steelworkers v Enterprise Wheel & Car Corp.,
 
 363 US 593, 597).
 

 Thus, looking at the only prong of the public policy exception argued before this Court, we conclude that the award does not violate a well-defined constitutional, statutory or common law of this State. The State would have the Court adopt the analysis of the dissenters at the Appellate Division who found that the award violates a strong public policy. According to the dissent, this policy is reflected in the employee manual, “which proscribes the presence within our prison system of those who affiliate with racist groups, and by common-law principles since the mere presence of such employees in these ‘paramilitary organizations charged with maintaining public safety and order’ * * * undermines the security of such system and denigrates public confidence therein” (255 AD2d, at 60 [citations omitted]). Neither the Correction Law and its concomitant regulations nor the employee manual proscribes the reinstatement of an employee who engaged in conduct as established here but who nevertheless is found
 
 not guilty
 
 of the charges as submitted to the arbitrator
 
 (see also, International Bhd. of Elec. Workers v Niagara Mohawk Power Corp., supra,
 
 at 718).
 

 The State also proffers Correction Law § 137 (2) and (5) as an explicit statutory basis for this Court to determine that Kuhnel’s reinstatement represents a security risk to the prison. However, in order for us to adopt the State’s argument, we would have to reject the specific factual findings made by the arbitrator that Kuhnel in fact posed no such threat. As abhorrent as Kuhnel’s personal conduct is, Judges cannot reject the factual findings of an arbitrator simply because they do not agree with them
 
 (see, United Paperworkers Intl. Union v Misco, Inc., supra,
 
 at 38).
 

 
 *329
 
 Lastly, the State suggests that the Court should engage in a balancing test to determine that Kuhnel’s right to freedom of expression is outweighed by the government’s interest in operating a correctional facility safely, efficiently and effectively. Had this dispute not been arbitrated, we indeed would be required to engage in a substantive weighing of Kuhnel’s rights against the State’s right to mitigate against potential disorder if he returned to work (see,
 
 Waters v Churchill,
 
 511 US 661). To do so, however, would require us to invade the province of the arbitrator under the guise of public policy, and to reexamine and redetermine the merits of this case. By submitting the issue of Kuhnel’s conduct to arbitration, the parties placed upon the arbitrator the responsibility of passing on the implications of Kuhnel’s offensive conduct under the collective bargaining agreement. We must honor the choice of the parties to have their controversy decided in that forum.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Rosenblatt concur.
 

 Order affirmed, with costs.