(December 12, 2006)

■ In the Matter of Local 333, United Marine Division, International Longshoreman's Association, AFL-CIO, Appellant, v New York City Department of Transportation, Respondent. [826 NYS2d 225]—

Judgment, Supreme Court, New York County (William A. Wetzel, J.), entered January 20, 2006, which denied the union's petition to confirm and granted the cross motion of respondent Department of Transportation (DOT) to vacate the arbitration award that had reinstated one of its members as a deckhand on the Staten Island Ferry, unanimously reversed, on the law, without costs, the judgment vacated, the petition granted, the cross motion denied and the arbitration award reinstated and confirmed.

The deckhand was terminated as the result of a random drug test administered shortly (eight days) after DOT instituted a

"Zero Tolerance Policy for Positive Drug and Alcohol Test Results." The new policy came in the wake of the infamous Staten Island Ferry accident on October 15, 2003, wherein a pilot, under the influence of medically prescribed drugs, allowed a ferryboat to collide with a concrete pier, killing 11 passengers and injuring dozens of others. Pursuant to the new policy:

"DOT shall seek the *termination* of any employees in the following safety-sensitive job titles who perform work related to the Staten Island Ferry and receive a *first time verified positive result* for a drug or alcohol test administered pursuant to regulations promulgated by the United States Department of Transportation: under the authority of the Omnibus Transportation Employee Testing Act of 1991 . . .

"boilermaker; supervisor boilermaker;

"captain; assistant captain; deckhand . . .

"This zero tolerance policy includes any refusal to submit to a drug or alcohol test as defined under Title 49 Part 40 of the Code of Federal Regulations" (emphasis added).

Failure to provide a sufficient urine sample (45 ml) within three hours of the first unsuccessful attempt, followed by a medical determination that no medical basis exists for such failure, is deemed a "refusal to test" for drugs or alcohol (49 CFR 40.193), which, in turn, is deemed by DOT's zero tolerance policy to be a positive test result.

Petitioner's member was unable to produce a sufficient urine sample, despite consuming an unspecified volume of liquid in the 2½ hours between his two attempts. Respondent terminated him in accordance with the policy provisions and the parties' grievance procedure. At arbitration, the arbitrator found that due to mitigating circumstances, i.e., respondent's failure to produce key witnesses thereby depriving petitioner of the opportunity to challenge the reliability of the test and whether it complied with the procedures specified in the regulation, dismissal was not warranted and the penalty was reduced to a 30-day suspension. Supreme Court reversed, holding that the arbitrator exceeded his power (CPLR 7511 [b] [1] [iii]) in that the award violated public policy and, in light of the recent Staten Island Ferry accident, was irrational and "devoid" of common sense.

An arbitration award may be vacated if it "violates a strong public policy, is irrational, or clearly exceeds a specifically enumerated limitation on the arbitrator's power" (*Matter of Board of Educ. of Arlington Cent. School Dist. v Arlington Teachers Assn.*, 78 NY2d 33, 37 [1991]). These exceptions are to

be narrowly read in light of the strong federal and New York public policies favoring resolution of labor disputes by arbitration. None of these exceptions are applicable to the arbitration award at issue.

A public policy whose violation warrants vacatur of an arbitration award must entail "strong and well-defined policy considerations embodied in constitutional, statutory or common law [that] prohibit a particular matter from being decided or certain relief from being granted by an arbitrator" (*Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York*, 94 NY2d 321, 327 [1999]). Alleged policies that are merely "general considerations of supposed public interests" are not sufficient grounds for vacatur (*W. R. Grace & Co. v Rubber Workers*, 461 US 757, 766 [1983]; *see also Paperworkers v Misco, Inc.*, 484 US 29 [1987]).

The award at issue did not violate such a strong, well-defined public policy. The "Zero Tolerance Policy for Positive Drug and Alcohol Test Results" in question was not expressly embodied in constitutional, statutory or common law; instead, it was adopted as respondent's new internal policy shortly before petitioner's member was tested. Nor, as Supreme Court held, does New York City Administrative Code § 12-307 (b)—which provides generally that the City and other public employers have sole authority over all aspects of the work and discipline of their employees, and generally removes those areas from the scope of collective bargaining—embody a public policy violated by the award. The final clause of that provision states: "notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on terms and conditions of employment, including, but not limited to, questions of workload, staffing and employee safety, are within the scope of collective bargaining." Clearly, the zero tolerance drug policy is a disciplinary matter that has a "practical impact" on the "terms and conditions of employment, including, but not limited to . . . employee safety," is thus deemed "within the scope of collective bargaining," and therefore, is within the scope of the broad arbitration clause at issue here.

The case at bar is analogous in many respects to *Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO* (6 NY3d 332, 335 [2005]). In that case, involving a similar drug policy, the Court of Appeals upheld a similar arbitral award imposing a remedy of suspension rather than dismissal, where on the "peculiar facts" presented, the arbitrator found that the employee's similar effort and failure to provide a sufficient sample was not a refusal to submit to test-

ing. The case at bar, decided prior to *Matter of New York City Tr. Auth.*, differed in that the arbitrator found the employee's failure to provide a sufficient sample to be a refusal to submit to testing and that the employee was deemed to be in a safety-sensitive position. However, the arbitrator's finding of refusal appears to be a mere couching of his decision in the language of the policy, since his ultimate determination—that the peculiar facts before him, i.e., DOT's failure to provide key witnesses and evidence regarding the test, support suspension, not dismissal—negates the constructive refusal as a basis for a constructive positive test and dismissal. The employee's job designation as safety-sensitive by DOT does not forbid his reinstatement by the arbitrator here (*Eastern Associated Coal Corp. v Mine Workers*, 531 US 57, 65 [2000]).

The apparent reasoning on the part of the arbitrator demonstrates that the award was not irrational, since it was reasonable and justified by the evidence, or lack thereof, before him (*see Matter of Peckerman v D & D Assoc.*, 165 AD2d 289, 296 [1991]).

The arbitrator did not exceed his powers in issuing the award, since the parties' collective bargaining agreement contains a broad arbitration clause which covers disputes such as this disciplinary matter arising under the agreement, allows the arbitrator to provide or direct such relief or remedy as he sees fit (*Paperworkers*, 484 US at 41; *New York State Correctional Officers & Police Benevolent Assn.*, 94 NY2d at 326), and is silent as to the zero tolerance policy. Both parties agreed to the arbitration of this matter, and respondent does not cite any specifically enumerated limitation on the arbitrator's power. Concur—Buckley, P.J., Saxe, Friedman, Williams and Malone, JJ.