■ In the Matter of the Arbitration between STATE OF NEW YORK, OFFICE OF CHILDREN AND FAMILY SERVICES, Appellant, and CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., et al., Respondents. [913 NYS2d 796]—

Malone Jr., J. Appeal from a judgment of the Supreme Court (McNamara, J.), entered August 31, 2009 in Albany County, which, among other things, denied petitioner's application in a proceeding pursuant to CPLR 7511 to vacate an arbitration award.

Respondent David H. Jackson is employed by petitioner as a

Youth Division Aide at Tryon Residential Center for Boys in Fulton County and, in such capacity, is a member of respondent Civil Service Employees Association, Inc. (hereinafter CSEA). In 2008, Jackson was issued a notice of discipline as a result of an incident in which he punched a juvenile resident and pushed a coworker into a wall.* The notice of discipline included a proposed penalty of termination of Jackson's employment. The matter was ultimately submitted to arbitration pursuant to the parties' collective bargaining agreement. After a hearing, the arbitrator found Jackson guilty of the misconduct but, after reviewing Jackson's entire employment record, found the proposed penalty to be inappropriate. Exercising his authority under the collective bargaining agreement to devise an appropriate remedy, the arbitrator imposed a penalty of suspension without pay for eight months, six hours of anger management therapy and a three-month probationary period upon Jackson's return to work. Petitioner thereafter commenced this proceeding to vacate the award, alleging that the reinstatement of Jackson violated the public policy of protecting the safety and welfare of the children placed in its facilities, and respondents cross-petitioned to confirm it. Supreme Court confirmed the award and petitioner appeals.

Initially, we note that a court's role in reviewing arbitration awards is limited and it "cannot examine the merits of an arbitration award and substitute its judgment for that of the arbitrator simply because it believes its interpretation would be the better one" (*Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York*, 94 NY2d 321, 326 [1999]). Further, the public policy exception applies only in " 'cases in which public policy considerations, embodied in statute or decisional law, prohibit, *in an absolute sense*, particular matters being decided or certain relief being granted by an arbitrator. Stated another way, the courts must be able to examine [the] arbitration agreement or an award *on its face* without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement' " (*Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1, 7 [2002], quoting *Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 631 [1979]; *see Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York*, 94 NY2d at 327). "Judicial restraint under the public policy exception is particularly appropriate" where, as here, the

* As a result of this incident, Jackson was arrested and charged with harassment in the second degree. He pleaded guilty to the charge and a $100 surcharge was imposed.

case involves arbitration pursuant to a collective bargaining agreement (*Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d at 7-8; *see Matter of DeMartino v New York City Dept. of Transp.*, 67 AD3d 479, 480 [2009]).

Here, in claiming that the award violates public policy, petitioner cites Executive Law § 501 (12), which authorizes it to "promulgate regulations concerning standards for the protection of children in residential facilities and programs operated or certified by [petitioner], from abuse and maltreatment." Among other things, the regulations implemented by petitioner generally prohibit the abuse of children (*see* 9 NYCRR 168.1), outline acceptable and unacceptable uses of physical restraints (*see* 9 NYCRR 168.3), and set forth procedures employed by petitioner to prevent child abuse in its facilities, including the review of employment applicants, the implementation of staff supervision and evaluation plans, and the notification and investigation procedures to be followed when a child is suspected to be abused (*see* 9 NYCRR subpart 166-1). Finally, petitioner cites recently-enacted Social Services Law § 412-a, which added to the Social Services Law definitions for, among other things, abused and neglected children who are in residential care settings.

However, while there is undoubtedly a strong public policy to protect children and prevent the abuse of them, particularly by those entrusted with their care, for a court to vacate an arbitration award on public policy grounds, "more than a general societal concern must be at issue" (*City School Dist. of the City of N.Y. v McGraham*, 75 AD3d 445, 450 [2010]; *see Matter of Local 333, United Mar. Div., Intl. Longshoreman's Assn., AFL-CIO v New York City Dept. of Transp.*, 35 AD3d 211, 213 [2006], *lv denied* 9 NY3d 805 [2007]). In that regard, Social Services Law § 412-a simply identifies actions and conditions that could constitute the abuse or neglect of children in residential care. It does not set forth any remedies or identify actions to be taken against those found responsible for the neglect or abuse. Similarly, in implementing the cited regulations, petitioner did not reserve the exclusive right to determine the appropriate penalty for an employee who did not abide by the safety and security protocols set forth in the regulations; rather, the parties agreed to submit disciplinary matters to arbitration. Article 33 of the parties' collective bargaining agreement states that "[t]he disciplinary arbitrator's decision with respect to guilt or innocence [and the] penalty . . . shall be final and binding upon the parties." The agreement specifically grants the arbitrator

"full authority, if the remedy proposed by [petitioner] is found to be inappropriate, to devise an appropriate remedy" and, in doing so, the arbitrator may consider the employee's entire employment record. Therefore, it cannot be said that the award was "prohibit[ed], in an absolute sense," by the cited public policy (*Matter of Sprinzen [Nomberg]*, 46 NY2d at 631).

Nor can it be said that "on its face," the award explicitly violates public policy (*id.*). Although the award suspending Jackson without pay ultimately results in his return to work, where he would be in close and direct contact with juvenile residents, the record reflects that the arbitrator considered the seriousness of Jackson's actions and the safety concerns of returning him to his position (*see Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d at 11; *City School Dist. of the City of N.Y. v McGraham*, 75 AD3d at 451). The arbitrator acknowledged that the duty of employees in Jackson's position was to keep the children in petitioner's care safe from harm and to refrain from inflicting any harm upon them. However, he credited Jackson's testimony that he had accepted responsibility for his actions, understood them to be wrong and had volunteered to attend anger management therapy and to be placed on probation upon his return to work (*compare Matter of Binghamton City School Dist. [Peacock]*, 33 AD3d 1074, 1077 [2006], *appeal dismissed* 8 NY3d 840 [2007]). The arbitrator also credited the testimony that the incident was not premeditated but, rather, was an isolated incident in Jackson's otherwise "above average" record of service. Considering that the regulations cited by petitioner do not contain specific sanctions for disciplinary infractions, or otherwise mandate the termination of an employee found to be guilty of misconduct, it cannot be said that the "final result creates an *explicit* conflict" with public policy (*Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York*, 94 NY2d at 327). While petitioner's reluctance to reinstate Jackson is understandable, considering that he admittedly lost his temper and punched in the face a handcuffed child in his care, the public policy cited simply does not prohibit him from remaining employed in his position and it is not within this Court's power to "second-guess" the factual or legal determinations of the arbitrator (*Matter of Sprinzen [Nomberg]*, 46 NY2d at 632; *see Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York*, 94 NY2d at 328 [Courts "cannot reject the factual findings of an arbitrator simply because they do not agree with them."]). Accordingly, we must conclude that Supreme Court did not err by confirming the award.

Mercure, J.P., Kavanagh, Garry and Egan Jr., JJ., concur. Ordered that the judgment is affirmed, without costs.