Garry, J.R
Appeal from an order of the Supreme Court (O’Connor, J.), entered July 24, 2015 in Albany County, which, among other things, partially denied petitioners’ application pursuant to CPLR 7510 to confirm an arbitration award.
In July 2014, petitioner Michael Bukowski, a correction officer at Ulster Correctional Facility, kicked an inmate in the groin, causing him to suffer serious permanent injuries. The inmate later told authorities that, in order to discipline the inmate for talking during a procedure known as “count,” Bukowski took him into a vestibule between two sets of double doors — a part of the facility where they could not be seen— forced the inmate to assume a frisk position against the wall with his legs apart, and then kicked him between the legs from behind. Bukowski then compelled the injured inmate to return to his cell and, later, to join a line of inmates moving to the cafeteria for a meal. After other inmates noticed that the inmate was weeping and other correction officers observed that he was limping and in apparent physical distress, the inmate was hospitalized. Part of his testicle had been ruptured and had to be surgically removed.
Respondent Department of Corrections and Community Supervision (hereinafter DOCCS) filed a notice of discipline, pursuant to the controlling collective bargaining agreement, that dismissed Bukowski from service based upon five disciplinary charges of violations of multiple provisions of a DOCCS’s Employee Manual and an employee directive pertaining to the *1387 use of physical force. Specifically, Bukowski was charged with causing serious injury to the inmate by using excessive and unjust physical force and corporal punishment, failing to file a required form reporting that he had used physical force, failing to notify his supervisor or medical staff that the inmate had been injured, falsely stating in a memorandum to a superior officer that he had not kicked the inmate, and falsely responding in the negative when interrogators from the DOCCS Office of the Inspector General asked him whether he had kicked the inmate.
Pursuant to the grievance procedure outlined in the collective bargaining agreement, the matter was submitted to arbitration. During the arbitration hearing, Bukowski denied that he had kicked or injured the inmate, claimed that the disciplinary session in the vestibule had involved only verbal correction and stated that he had not noticed any signs that the inmate was injured. Following the hearing, the arbitrator sustained all five charges of misconduct, but reduced the penalty from termination to a 120-day suspension. DOCCS refused to comply with the reduced penalty and did not permit Bukowski to return to duty. Bukowski and petitioner New York State Correctional Officers and Police Benevolent Association, Inc. commenced this proceeding pursuant to CPLR article 75 to confirm the arbitrator’s decision. Supreme Court confirmed the award only to the extent of sustaining the charges of misconduct against Bukowski, vacated the portion of the award that had reduced the penalty and remitted the matter for the imposition of a new penalty. Petitioners appeal.
We affirm, but upon distinct grounds. As respondents concede, Supreme Court applied the wrong standard when it vacated the penalty based upon finding the penalty so disproportionate to the offense that it “shockfed] the conscience.” That standard applies to penalty determinations in certain other administrative circumstances (see e.g. Matter of Kelly v Safir, 96 NY2d 32, 39-40 [2001]; Matter of Saunders v Rockland Bd. of Coop. Educ. Servs., 62 AD3d 1012, 1013 [2009]), but not here, where the parties have entered into a collective bargaining agreement that provides for the resolution of disputes through binding arbitration. In these circumstances, the reviewing court’s role is significantly restricted (see Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d 321, 326 [1999]; Matter of Sprinzen [Nomberg], 46 NY2d 623, 629-631 [1979]; Matter of State of N.Y., Off. of Children & Family Servs. [Civil Serv. Empls. Assn., Inc.], 79 AD3d 1438, 1439 [2010], lv denied 17 NY3d 706 [2011]).
*1388 “[C]ourts may vacate arbitral awards in some limited circumstances. A court may vacate an award when it violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on an arbitrator’s power under CPLR 7511 (b) (1)” (Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d at 326 [citation omitted]). The public policy exception applies when “strong and well-defined policy considerations embodied in constitutional, statutory or common law prohibit a particular matter from being decided or certain relief from being granted by an arbitrator” {id. at 327). Respondents argue that the penalty imposed by the arbitrator here qualifies for judicial intervention under the second prong of this test, in that the relief granted by the arbitrator in reducing Bukowski’s penalty from termination to suspension violates “a well-defined constitutional, statutory or common law of this [s]tate” (id. at 328).
A court may apply this exception to vacate an arbitration award only when “public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, . . . certain relief being granted by an arbitrator. Stated another way, the courts must be able to examine [the] . . . award on its face without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement” (Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d 1, 7 [2002] [internal quotation marks and citation omitted]; accord Matter of State of N.Y., Off. of Children & Family Servs. [Civil Serv. Empls. Assn., Inc.], 79 AD3d at 1439; see Matter of Fallon [Greater Johnstown School Dist.], 118 AD2d 936, 937 [1986], lv denied 68 NY2d 603 [1986]). The judicial inquiry must focus on the actual result of the arbitration process — here, the arbitrator’s determinations as to Bukowski’s guilt and the consequent penalty — rather than the underlying reasoning, and the award may be vacated only when, on its face and, “because of its reach, [it] violates an explicit law of this [s]tate” (Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d at 327).
Initially, application of these principles requires that we reject respondents’ argument that the penalty of suspension falls within the public policy exception because it violates a zero-tolerance policy against sexual abuse of inmates by correction officers established by the federal Prison Rape Elimination Act (see 42 USC § 15601 et seq.). Respondents contend that Bukowski’s conduct constituted the sexual abuse of an inmate *1389 by a correction officer within the meaning of the Act, and that the Act’s implementing regulations make termination the presumptive disciplinary penalty for such conduct (see 28 CFR 115.6 [2]; 115.76 [b]). However, as Bukowski was never charged with sexual abuse, the arbitration award necessarily fails to include any finding as to whether he committed such an offense. The public policy exception thus cannot be applied on this basis (compare Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d at 328).
We reach a different conclusion as to respondents’ alternate contention that the matter qualifies for judicial intervention because the penalty of suspension, imposed for the particular offenses that the arbitrator found that Bukowski committed, violates a specific, strong and clearly expressed policy against the use of corporal punishment and unjustified, excessive physical force by correction officers against prison inmates. In reaching this conclusion, we are mindful that “the scope of the public policy exception to an arbitrator’s power to resolve disputes is extremely narrow” (Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y., 1 NY3d 72, 80 [2003]). However, to construe the exception so narrowly as to exclude cases that fall wholly within the strict judicial standards that have been established for its application would be, in effect, to declare that there is no such exception at all. Unlike other cases in which the public policy exception has been held inapplicable because statutory enunciations of public policy were too vague, attenuated or general, here we have a constellation of clearly-worded statutes and regulations setting forth the state’s public policy against the abuse of inmates in both general and highly specific terms.
Beginning with basic principles, cruel and unusual punishment is constitutionally prohibited (see US Const, 8th Amend; NY Const, art I, § 5). As for general principles enunciated in New York law, Correction Law § 70 requires DOCCS to establish and maintain its correctional facilities with due regard for “[t]he right of every person in the custody of [DOCCS] to receive humane treatment” and “[t]he health and safety of every person in [its] custody” (Correction Law § 70 [2] [b], [c]). DOCCS regulations correspondingly provide in general terms that prison discipline must be fairly and impartially administered and must not be unduly severe (see 7 NYCRR 250.2 [d], [e]). Within this general framework, Correction Law § 137 (5) specifically addresses the circumstances presented *1390 here by establishing an express and absolute prohibition against the physical abuse of inmates by correction officers. The statute provides that “[n]o inmate in the care or custody of [DOCCS] shall be subjected to degrading treatment, and no officer or other employee of [DOCCS] shall inflict any blows whatever upon any inmate, unless in self defense, or to suppress a revolt or insurrection” (Correction Law § 137 [5] [emphasis added]). DOCCS regulations provide in equally specific and absolute terms that “[c]orporal punishment [of inmates by correction officers] is absolutely forbidden for any purpose and under all circumstances” (7 NYCRR 250.2 [g] [emphasis added]). Taken together, these statutory and regulatory prohibitions are not broad, vague or attenuated statements of general principle to which the public policy exception does not apply (see e.g. City School Dist. of the City of N.Y. v McGraham, 17 NY3d 917, 919-920 [2011]; Matter of Selman v State of N.Y. Dept. of Correctional Servs., 5 AD3d 144, 144-145 [2004]). Instead, they establish a strong, well-defined public policy that specifically and absolutely prohibits the physical abuse or corporal punishment of inmates by correction officers.
We are mindful that the cited statutory provisions do not expressly address the penalties to be imposed upon correction officers who violate them. Nevertheless, in view of the absolute nature of the statutory and regulatory provisions and the particular nature of Bukowski’s offenses, we find, based solely upon the face of the award, that public policy precludes the enforcement of the penalty of a 120-day suspension. It bears emphasizing that the arbitrator’s findings were not limited to finding Bukowski guilty of the serious misconduct of causing severe injury to the inmate by using unjustified physical force against him. In sustaining all of the charges of misconduct, the arbitrator further found that Bukowski sought to conceal his conduct from his employer and repeatedly and consistently lied about it. The arbitrator found that Bukowski did not file the required report that would have informed his superiors that he had used physical force upon an inmate, did not advise his supervisors or the facility’s medical staff that the inmate had been injured, falsely stated that he had not kicked the inmate when a supervisor directed him to file an explanatory memorandum after the inmate’s injuries were discovered, and again falsely stated that he had not done so during the subsequent investigation. The arbitrator’s findings further constitute an implicit determination that Bukowski was untruthful even in the course of the arbitration hearing, as they flatly contradict his testimony that he did not kick or injure the inmate, nor did he notice any signs of injury and distress.
*1391 Accepting these factual findings as final, as we must, we find that the penalty of suspension — which would return Bukowski to his prior position after 120 days, with unlimited direct contact with inmates and continued responsibility for their care, control and discipline — creates an explicit conflict upon the face of the award with the strong, specific and absolute public policy against the use of unjustified physical force or corporal punishment “for any purpose and under all circumstances” (7 NYCRR 250.2 [g]).[1] The arbitrator’s findings with regard to Bukowski’s dishonesty and failure to accept responsibility after his attack on the inmate differentiate this case from prior determinations in which courts have declined to disturb penalties imposed by arbitrators in circumstances where the findings revealed that the offenses were unlikely to be repeated. This Court, for example, found that the public policy against child abuse was not violated by an arbitration award that returned a youth aide who had punched a juvenile resident to his position, finding that the arbitrator had given due consideration to the serious nature of the conduct and the safety concerns posed by returning the aide to his position, and had credited the aide’s testimony that he understood that his actions were wrong, accepted responsibility for them and had volunteered to engage in therapy and be placed on probation (Matter of State of N.Y., Off. of Children & Family Servs. [Civil Serv. Empls. Assn., Inc.], 79 AD3d at 1440-1441; see City School Dist. of the City of N.Y. v McGraham, 17 NY3d at 920 [suspension and reassignment of a teacher who communicated inappropriately with a student was not irrational where the arbitrator found that she was remorseful and her actions were unlikely to be repeated]). Here, in clear contrast, nothing in the arbitrator’s findings or the penalty that was imposed appears to give any consideration to the public policy implications of Bukowski’s consistent dishonesty and his failure to accept responsibility, and the consequent safety and public policy concerns that result from returning him to his position without constraints.[2]
Accordingly, in view of the statutory and regulatory prohibitions against the use of unjustified physical force and the imposition of corporal punishment in all circumstances, and given that Bukowski not only unquestionably engaged in such *1392 prohibited conduct here, but also thereafter repeatedly lied about his actions, thus evidencing a failure to acknowledge the magnitude of his misconduct, we conclude that public policy precludes enforcement of the penalty imposed by the arbitrator in this matter (see Matter of Binghamton City School Dist. [Peacock], 33 AD3d 1074, 1076-1077 [2006], appeal dismissed 8 NY3d 840 [2007]; see also Matter of Phillips v Manhattan & Bronx Surface Tr. Operating Auth., 132 AD3d 149, 157 [2015], lv denied 27 NY3d 901 [2016]). In reaching this result, we take no position as to the penalty that ultimately should be imposed; the appropriate penalty, which should be both effective and sufficiently address the public policy considerations previously discussed, is a matter for the arbitrator to resolve pursuant to the terms of the collective bargaining agreement (see Matter of Phillips v Manhattan & Bronx Surface Tr. Operating Auth., 132 AD3d at 157; Matter of State of N.Y. Off. of Mental Health [New York State Correctional Officers & Police Benevolent Assn., Inc.], 46 AD3d 1269, 1271-1272 [2007], lv dismissed 10 NY3d 826 [2008]; Matter of Binghamton City School Dist. [Peacock], 46 AD3d 1042, 1043-1044 [2007]). Accordingly, we affirm Supreme Court’s order remitting the matter for the imposition of a new penalty.
Egan Jr., Devine, Clark and Aarons, JJ., concur.
Ordered that the order is affirmed, without costs.

. Respondents assert that additional provisions within the collective bargaining agreement preclude them from potentially assigning Bukowski to serve in a position in which he would have no direct contact with inmates.

. The arbitrator’s decision stated that appropriate weight had been applied to Bukowski’s work history, which did not include any prior misconduct, but did not set forth any other reason for the penalty imposed.