Rosenblatt v New York State Dept. of Pub. Serv. (2025 NY Slip Op 51746(U))

[*1]

Rosenblatt v New York State Dept. of Pub. Serv.

2025 NY Slip Op 51746(U)

Decided on November 3, 2025

Supreme Court, Albany County

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 3, 2025
Supreme Court, Albany County

Albert Rosenblatt, Petitioner,

against
New York State Department of Public Service, Respondent.

Index No. 905067-25

LEWIS B. OLIVER JR., ESQ. 
Oliver Law Office 
Attorney for Petitioner Rosenblatt 
156 Madison Avenue 
Albany, New York L2202
Attorney for the New York State 
Department of Public Service John Sipos
By: Vincent Stark, Assistant Counsel, Of Counsel
Empire State Plaza Agency Building 3 
Albany, New York 12223-135O

Peter A. Lynch, J.

INTRODUCTION
This is a special proceeding pursuant to CPLR §7510. Petitioner was employed by the Department of Public Service as an Auditor I, GS-18, with approximately 30 years of service.[FN1]
Petitioner seeks to vacate the Arbitrator Opinion and Award dated March 4, 2025 (Glanstein), in [*2]which the Arbitrator made the following award:
1. The Department of Public Service had just cause to issue the Notice of Discipline dated May 24, 20l8 to the Grievant Albert Rosenblatt.
2. The Grievant is guilty of Charge I 'Misconduct - Insubordination - Anger and Stress Management Program " Specification One, Two and/or Three contained in the Notice of Discipline dated May 24,2018.
3. The Grievant is guilty of Charge 2 'Misconduct - Insubordination - Department ID" Specifications One and/or Two contained in the Notice of Discipline dated May 24,2018.
4. Termination is the appropriate penalty.
5. The Notice of Discipline dated May 24,2018 was not issued as a retaliatory personnel action as addressed by Civil Service Law Law Section 75-b.[FN2] (Emphasis added)
At issue is whether the Arbitrator exceeded her authority, violated policy, and/or was irrational in her findings. In addition, at issue is the question of whether the notice of discipline was retaliatory in the first instance.
NOTICE OF DISCIPLINE[FN3] 
The subject case does not come before the Court in a vacuum. Rather, as here, Petitioner was the subject of disciplinary proceedings for years before the issuance of the subject Notice of Discipline on May 24, 2018.[FN4]

By Arbitrator Opinion and Award (Battisti) dated November 6, 2017, petitioner was found guilty of insubordination as charged in a Notice of Discipline dated June 16, 2016.[FN5]
Interestingly, Janice Neissen of Human Resources, more fully discussed below, testified against petitioner in the underlying proceeding. Moreover, Arbitrator Battisti described his observations of petitioner (as Grievant) as follows:
"The Grievant displayed no remorse, no intent to correct his misconduct behavior and expressed no intention to follow Agency policy and directives or his supervisor's directions and assignments. On the contrary, the Grievant's behavior during the proceeding was annoying and disruptive during the testimony of other witnesses. His behavior required this Arbitrator to confer privately, in camera, with the Grievant and his counsel wherein he was instructed to remain silent unless requested to speak by counsel [*3]or this Arbitrator. There were several occasions when he interrupted the proceeding and ignored his counsel's request to be silent. This type of behavior on the part of the Grievant is extremely concerning."[FN6] (Emphasis added)
Notwithstanding the cited annoyance, Arbitrator Battisti found the penalty of termination was not appropriate. Instead, he issued an Award that included a 90-day suspension period and the following mandate, to wit:
4. The Grievant shall attend an individual counseling program which addresses the issues of anger and stress management through the Employees Assistance Program provided for in Article 10 of the Agreement. Participation, on the Grievant's own time, will involve a minimum of thirty-five (35) hours; the design and timing of which will be decided upon by the certified or licensed EAP provider. The program is to be monitored by an EAP coordinator with bi-weekly attendance reports through the completion of the program and a final report submitted to the Department of Public Service Director of Human Resources 2, Ms. Christine Balleau."[FN7]

Notably, Arbitrator Battisti did not specify a start date for the counseling program to begin, and he refused to issue any clarification relative to the program commencement date under the "Functus Officio Doctrine."[FN8]
(See American Intl. Specialty Lines Ins. Co. v. Allied Capital Corp., 35 NY3d 64, 71 [2020], where the Court noted "under the common-law rule, arbitrators relinquish all powers over the parties to the arbitration upon issuance of a final award and, therefore, are precluded from modifying or reconsidering that award.")
By letter dated February 8, 2018, Janice Nissen, Chief Utility Programs, Human Resources Management, acknowledged the "design and timing of this program will be decided upon by a certified or licensed counseling provider through referral from EAP," and unilaterally added a timing mandate, as follows:
"The Department understands that you need a reasonable amount of time to locate and enroll in an anger/stress management program. We have set a deadline of March 15,2018, by which time you must be enrolled in and have begun the counseling program mandated by the Opinion and Award. The requirement that you enroll in and begin the counseling program by March 15,2018, is considered a directive. If you have not enrolled in and begun the counseling program by March 15, 2018, it will be considered insubordination, which could subject you to disciplinary action."[FN9] (Emphasis added)
The imposition of the date certain for the program commencement is squarely at issue herein.
The instant Notice of Discipline dated May 24, 2018, is inextricably interwoven in the Battisti Arbitration Award, since petitioner was charged with misconduct/insubordination, arising out of his claimed failure to timely start the Battisti ordered counseling program on or before March 15, 2018, and for failing to surrender his employment ID during the corresponding suspension period, which ran from November 10, 2017, to February 7, 2018).[FN10]
The Notice of Discipline dated May 24, 2018, reiterated the directive and commenced the disciplinary process, as follows, inter alia,
. . . The February 8, 2018 letter reminded you that the Arbitrators Award mandated your attendance in an individual counseling program to address issues of anger and stress management and set forth the terms and conditions of the mandated program and reporting mechanisms. Recognizing that you needed sufficient time to identify, enroll in and begin the counseling program, the February 8, 2018 Department's letter directed you to be enrolled in and begin the mandated counseling program by no later than March 15, 2018. The letter notified you that your failure to meet this deadline for enrolling in and beginning the counseling program would be considered insubordination, which could subject you to disciplinary action.[FN11]

In fine, Nissen, not Arbitrator Battisti nor the EAP, set the commencement date certain for petitioner to enroll in and commence the counseling program on or before March 15, 2018. There has not been a record demonstration, however, that a rational basis exists between issuance of letter notice as of February 8, 2018, that the design and timing of the program will be decided by a yet to be selected licensed counselor, and the further directive that petitioner must be enrolled in and begin the program by March 15, 2018. Stated another way, a conflict exists between placing the authority to establish the timing of the program with a yet to be determined counselor, and the imposition of the March 15, 2018, mandate by Niesen, especially where, as here, Battisti left implementation of the counseling process to the EAP.
On April 16, 2018, petitioner was subjected to an interrogation conducted by Nissen.[FN12]
When petitioner was directed to leave the building on November 9, 2018, to commence the suspension period, he did not recall being told to surrender his employee ID but thought he had left it on the desk.[FN13]
He ultimately found the ID at home and reported it to his employer, and surrendered it to the security Guard.[FN14]
 Petitioner acknowledged being directed to commence the counseling session by March 15, 2018, and that he had not done so but had contacted three [*4]psychologists from an EAP list to begin the process.[FN15]

Dr. Hymowitz is a licensed psychologist, and on the EAP list to provide services for members of the New York State Public Employees Federation.[FN16]
Petitioner contacted her to start the counseling program, and the first session was held on April 17, 2018, i.e. the counseling session commenced before the issuance of the Notice of Discipline on May 24, 2018.[FN17]
On May 14, 2018, Christine F. Balleau Director Human Resources 2, requested Dr. Ellen Hymowitz to provide updates on the counseling program.[FN18]

Dr. Hymowitz testified,
A. Did Mr. Rosenblatt complete thirty-five mandated counseling sessions?
A. Yes.[FN19]
Dr. Hymowitz notified Ms. Balleau of petitioner's session attendance and completion via e-mail.[FN20]
Balleau acknowledged that petitioner completed the program, but noted it was after March 15, 2018.[FN21]
The Court notes that both Balleau and Nissen work for Human Resources, so a reasonable inference is that notice to Balleau constituted notice to Nissen.
Thus, the record demonstrates that Dr. Hymowitz notified Balleau that petitioner did, in fact, successfully complete a counseling program ordered by Battisti.[FN22]

OTHER PRIOR ARBITRATION PROCEEDINGS
By Opinion and Award (Gelernter) dated September 4, 2019, petitioner was found guilty of insubordination as charged in a Notice of Discipline (NOD) dated May 18, 2017, and suspended without pay, with the additional proviso that he undergoes training and that he "not repeat the type of insubordinate behavior that led to this and prior NODs."[FN23]
Moreover, the Arbitrator determined that the disciplinary proceeding was not retaliatory.
By Arbitrator Opinion and Award (Denson) dated September 24, 2023, petitioner was found guilty of one of eight charges as set forth in a Notice of Discipline dated July 26, 2021, [*5]and was subjected to a one-year suspension without pay.[FN24]
The finding that termination was not appropriate as of September 24, 2023, conflicts with the finding that termination was appropriate as of March 24, 2025 as more fully discussed below, but the findings are on distinct facts.

ARBITRATION OPINION AND AWARD[FN25]

By Arbitrator Opinion and Award (Glanstein) dated March 4, 2025, petitioner was found guilty of both charges of insubordination as charged in a Notice of Discipline dated May 24, 2018, with a recommended penalty of termination.[FN26]
The Arbitrator determined it was not disputed that petitioner failed to enroll and commence the mandated counseling program by March 15, 2018, and that he failed to surrender his Department ID during the suspension period; rather, the dispute is whether the claimed infractions constitute insubordination and misconduct in the first instance.[FN27]

The Arbitrator found that petitioner intentionally delayed enrolling in the program beyond the March 15, 2018, start date, holding,
"This willful delay in starting his first therapy session demonstrated an intent on his part to disobey Ms. Nissen's order to start the sessions by Much 15, 20l8 and constitutes insubordination."[FN28] (Emphasis added)
With respect to the undisputed fact that petitioner did not surrender his ID card upon commencement of the suspension, the Arbitrator found,
"The Grievant' s explanation how he suddenly found it right before his return to work is not credible."[FN29]
In so finding, the Arbitrator found petitioner guilt of count 2 insubordination.
The Arbitrator found that respondent's actions were not retaliatory in accord with Civil Service Law § 75-b. The arbitrator noted petitioner's claim,
"The Grievant states that the charges of insubordination for failure to comply with the directives by the Director of Human Resources, Janice Nissen were brought solely to retaliate against the Grievant for his reporting a $10,000 additional salary received by Ms. Nissen for her out of title work which resulted in u M-4 position being earmarked."[FN30]
Rejecting petitioner's claim, the Arbitrator reasoned,
"I have reviewed compared and evaluated the testimony of all the witnesses who testified on this issue and find that the Grievant has not established a nexus between the Grievant' s filing of a whistleblower complaint against Ms. Nissen and the issuance of the May 24,2018 NOD. The credible evidence established that there was a separate and independent basis for the issuance of the May 24, 2Ol8 NOD. The Notice of Discipline dated May 24,2018 was not issued as a retaliatory personnel action as addressed by Civil Service Law § 75-b."[FN31]
Next, the Arbitrator addressed the penalty of termination. Citing progressive discipline, and petitioner's history of disciplinary suspensions, the Arbitrator held that termination was an appropriate penalty.[FN32]

 PETITION[FN33]

Petitioner seeks vacatur of the Arbitrator Opinion and Award dated March 4, 2025, in accord with CPLR§ 7510.

ANSWER[FN34]

Respondent interposed an Answer.

STATEMENT OF LAW
CPLR §7511 (b) (1) (iii) provides, inter alia:
(b) Grounds for vacating.
1. 
The award shall be vacated on the application of a party who either participated 
in the arbitration or was served with a notice of intention to arbitrate if the 
court finds that the rights of that party were prejudiced by:
 (i) corruption, fraud or misconduct in procuring the award; or
(ii) partiality of an arbitrator appointed as a neutral, except where the award was by confession; or
(iii) an arbitrator, or agency or person making the award 
exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or
 (iv) failure to follow the procedure of this article, unless the party 
 applying to vacate the award continued with the arbitration with notice of 
 the defect and without objection. (Emphasis added)
Judicial review of an arbitration award is "extremely limited" in scope (See Matter of County of Onondaga (Civil Serv. Empls. Assn., Inc.), 2023 NY App. LEXIS 3587, p. 2 [4th Dept. 2023], where the Court held,
"[J]udicial review of arbitration awards is extremely limited. Generally, courts 'may vacate an arbitration award only if it violates a strong public policy, is irrational, or clearly exceeds a specifically enumerated limitation on the arbitrator's power." (Internal quotations and citations omitted; emphasis added)
(See also, American Intl. Specialty Lines Ins. Co. v. Allied Capital Corp., 35 NY3d 64 [2020]; Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME. AFL-CIO (New York State Dept. of Corr. & Community Supervision), 188 AD3d 1534 [3d Dept. 2020]).

 IRRATIONAL
Since a court may vacate an award that is irrational, one must assess what it means to constitute an irrational act. In Barone v. Haskins, 193 AD3d 1388 [4th Dept. 2021], the Court held,
"An award is irrational where there is no proof whatever to justify the award. Where, however, an arbitrator offer[s] even a barely colorable justification for the outcome reached, the arbitration award must be upheld." (Internal quotations and citations omitted; emphasis added)
In this Court's view, the Arbitrator's decision to find misconduct/insubordination with respect to petitioner's failure to surrender his Employment ID upon suspension was fully supported by the record. Moreover, it is manifest that the Arbitrator exercised her discretion when finding that petitioner's claim that he found the ID at the last minute was not credible.
Whether petitioner's failure to enroll in and commence the counseling program on or before March 15, 2018, constituted misconduct/insubordination, however, the Court reaches a different result. Here, it is undisputed that petitioner enrolled in and began participation in the program on April 17, 2018, and successfully completed 35 sessions. Thus, the focus is the program start date.
As a preliminary matter, Arbitrator Battisti did not set a start date. Moreover, in the February 8, 2018, letter, Nissen sent a mixed message, by specifically advising the timing of the program would be determined by a yet to be selected counselor, and then superimposing the March 15, 2018, start date certain. Since the timing of the counseling program was in the hands of the counselor to be selected under the EAP program, it is manifest that imposition of the March 15, 2018, start date in advance of selection of the counselor was arbitrary and capricious. Stated another way, the record does not establish a rational basis between the imposition of the March 15, 2018, start date certain, and the directive that the timing of the counseling sessions would be made by a yet to be selected counselor from the EAP list.
In essence, the Arbitrator exceeded her authority and effectively modified the terms of the Battisti Award, by recognizing the Neissen 's imposition of the March 15, 2018 program start date as an "order," rendering that part of the Award fundamentally irrational (See In the Matter of the Arbitration between Civil Service Employees Association, Inc. Local 1000, AFSCME, AFL-CIO and New York State Police, 230 A.D. 939 [3d Dept. 8/22/2024]). 
Accordingly, the finding of guilty with respect to Count I (i.e., the charged failure to meet the counseling program start date of March 15, 2018), was arbitrary and capricious, and is [*6]vacated.

 PUBLIC POLICY GROUNDS
In Matter of Walker (Read), 168 AD3d 1253, 1255 [3d Dept. 2019], the Court held,
"To vacate an arbitration award on public policy grounds, there must be strong and well-defined policy considerations embodied in constitutional, statutory or common law [that] prohibit a particular matter from being decided or certain relief from being granted by an arbitrator. For relief granted by an arbitrator to be violative of public policy, courts must be able to examine [the] arbitration . . . award on its face, without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement. In other words, judicial inquiry is constrained to determining whether the actual result of the arbitration process—without evaluation of the underlying rationale—on its face and, because of its reach, . . . violates an explicit law of this [s]tate." (internal quotations and citations omitted) (emphasis added).
With respect to public policy, in New York State Correctional Officers & Police Benevolent Ass'n v. State, 94 NY2d 321, 327 [1999], the Court held, "We must focus on the result only" (emphasis added). (See also, Matter of NY off. for People with Dev.al Disabilities (civil Serv. Empls. Ass'n, Local 1000, Afscme, Afl-Cio) , 193 AD3d 1305, 1309 [3d Dept. 2021], Matter of Ulster County Sheriff's Empls. Assn., CWA Local 1105 (Ulster County Sheriff's Dept.), 100 AD3d 1327, 1329 [3d Dept. 2012], where Court held, "judicial restraint under the public policy exception is particularly appropriate where, as here, the case involves arbitration pursuant to a collective bargaining agreement" (internal quotation marks and citations omitted); Matter of Albany Police Supervisor's Assn. (City of Albany), 95 AD3d 1491, 1492-1493 [3d Dept. 2012]).
By making the determination that Petitioner was guilty of misconduct/insubordination by not surrendering his employment ID upon suspension, the record does not support a policy violation. 
Petitioner failed to argue, let alone establish, that the finding of was guilty of misconduct/insubordination by not enrolling in and commencing the counseling program violated policy.

RETALIATION
Civil Service Law 75-b (2) (a) provides:
(a)A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information: (i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. "Improper governmental action" shall mean any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation. (Emphasis added)
Here, the record supports the Arbitrator's finding that the issuance of the notice of discipline was not retaliatory, since petitioner had not surrendered his Employee ID upon suspension and was dilatory in enrolling in and commencing the mandated counseling program, i.e. grounds distinct from any whistleblower claim. Of course, since it is manifest, that petitioner has a long history of insubordination, discipline, and suspension, the claimed retaliation is wholly self-serving and not credible.

PENALTY
The Arbitrator found that the termination penalty was appropriate based on her findings that petitioner was guilty of both charges set forth in the Notice of Discipline. Since, this Court has determined that the finding of guilty on Count I of the Notice of Discipline (i.e. misconduct/insubordination for failure to enroll in and commence the counseling program on or before March 15, 2028) is vacated as arbitrary and capricious, the termination penalty is also vacated, and the matter remitted to a different arbitrator for the imposition of a new penalty consistent with the findings of the Court.

 CONCLUSION
For the reasons more fully stated above, it be and hereby is,
ORDERED, ADJUDGED AND DECREED, that the Arbitrator's Opinion and Award is confirmed, in part, with respect to the determination that Petitioner is guilty of misconduct/insubordination, as charged in Count II of the Notice of Discipline (i.e. failure to surrender Employee ID upon suspension), and it is further,
ORDERED, ADJUDGED AND DECREED, that the Arbitrator's Opinion and Award is vacated with respect to the determination that Petitioner was guilty of Count I of the Notice of Discipline (i.e. misconduct/insubordination for failure to enroll in and commence the counseling program on or before March 15, 2028) and it is further,
ORDERED, ADJUDGED AND DECREED, that the penalty of termination is vacated, and it is further
ORDERED, ADJUDGED AND DECREED, that the issuance of the Notice of Discipline was not retaliatory, and it is further,
ORDERED, ADJUDGED AND DECREED, that this matter is remitted to a different arbitrator for the imposition of a new penalty consistent with the findings of the Court.
This memorandum constitutes the Decision, Order and Judgment of the Court.
Dated: November 3, 2025
Albany, New York
PETER A. LYNCH, J.S.C.

Footnotes

Footnote 1:NYSCEF Doc. No. 5 — Verified Petition ¶ 5.

Footnote 2:NYSCEF Doc. No. 10 AND No. 54 — Arbitrator Opinion and Award dated March 4, 2025, p. 11.

Footnote 3:NYSCEF Doc. No. 33 — Notice of Discipline. Dated 5/24/2018.

Footnote 4:NYSCEF Doc. Nos. 94, 95, and 96.

Footnote 5:NYSCEF Doc. No. 32 — Arbitrator's Opinion and Award (Battisti) dated November 6, 2017. 

Footnote 6:NYSCEF Doc. No. 32 — Arbitrator's Opinion and Award (Battisti) dated November 6, 2017, p. 48.

Footnote 7:NYSCEF Doc. No. 32 — Arbitrator's Opinion and Award (Battisti) dated November 6, 2017, p. 49. 

Footnote 8:NYSCEF Doc. No. 21; NYSCEF Doc. No. 5 — Verified Petition ¶ 18.

Footnote 9:NYSCEF Doc. No. 98.

Footnote 10:NYSCEF Doc. No. 33 — Notice of Discipline. Dated 5/24/2018.

Footnote 11:NYSCEF Doc. No. 33 — Notice of Discipline. Dated 5/24/2018 p. 2-3.

Footnote 12:NYSCEF Doc. No. 36 — Interrogation Transcript. The interrogation was recorded but the recording was not submitted as part of the record for the Court to review.

Footnote 13:NYSCEF Doc. No. 36 — Interrogation Transcript p. 8-9.

Footnote 14:NYSCEF Doc. No. 36 — Interrogation Transcript p. 11-13.

Footnote 15:NYSCEF Doc. No. 36 — Interrogation Transcript p. 13-14, 17-18.

Footnote 16:NYSCEF Doc. No. 60 Hymowitz Tr. p. 439-440, 442.

Footnote 17:NYSCEF Doc. No. 60 Hymowitz Tr. p. 443, 446.

Footnote 18:NYSCEF Doc. No. 22.

Footnote 19:NYSCEF Doc. No. 16 — Tr. p. 468.

Footnote 20:NYSCEF Doc. No. 60 Hymowitz Tr. p. 459, 468.

Footnote 21:NYSCEF Doc. No. 58 — Balleau Tr. p. 58.

Footnote 22:NYSCEF Doc. No. 5 — Verified Petition ¶ 24, 25, 26; NYSCEF Doc. No. 86 — Verified Answer ¶ 25, 26; NYSCEF Doc. No. 60 Hymowitz Tr. p. 468.

Footnote 23:NYSCEF Doc. No. 97

Footnote 24:NYSCEF Doc. No. 11.

Footnote 25:NYSCEF Doc. No. 10 — Arbitrator Opinion and Award dated March 4, 2025.

Footnote 26:NYSCEF Doc. No.10. 

Footnote 27:NYSCEF Doc. No. 10 — Arbitrator Opinion and Award dated March 4, 2025, p. 4.

Footnote 28:NYSCEF Doc. No. 10 — Arbitrator Opinion and Award dated March 4, 2025, p. 9.

Footnote 29:NYSCEF Doc. No. 10 — Arbitrator Opinion and Award dated March 4, 2025, p. 11.

Footnote 30:NYSCEF Doc. No. 10 — Arbitrator Opinion and Award dated March 4, 2025, p. 12.

Footnote 31:NYSCEF Doc. No. 10 — Arbitrator Opinion and Award dated March 4, 2025, p. 13.

Footnote 32:NYSCEF Doc. No. 10 — Arbitrator Opinion and Award dated March 4, 2025, p. 14.

Footnote 33:NYSCEF Doc. No. 5 — Notice of Petition and Verified Petition.

Footnote 34:NYSCEF Doc. No. 86 — Verified Answer.